JAMES CHESARONE *vs.* PINEWOOD BUILDERS, INC.
& another.[1]

Middlesex. October 2, 1962. — December 17, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Water. Trespass. Equity Jurisdiction,* Trespass, Retention of suit for
    further relief. *Damages,* For trespass. *Municipal Corporations,* Tres-
    pass. *Equity Pleading and Practice,* Rehearing, Injunction, Suit re-
    specting trespass.

Deliberate action of a developer of a tract of land in constructing a sur-
    face water drainage system in the tract whereby the water was chan-
    nelled to and discharged upon the adjacent land of another was a con-
    tinuing trespass entitling the other owner to an injunction against the
    discharge unless factors which might be involved in an alternative
    method of disposal of the water, such as physical difficulty, damage to
    purchasers of lots in the tract, or grossly disproportionate expense, con-
    stituted exceptional circumstances rendering the injunction inequitable.
    [240–241]
Upon the granting of an injunction in equity against discharge of water
    upon the plaintiff's land from adjacent land of the defendant, the plain-
    tiff, under a prayer for damages, would be entitled to the amount of the
    diminution of the rental value of his land while the discharge continued.
    [241–242]

---

[1] Town of Framingham.

Chesarone *v.* Pinewood Builders, Inc.

The plaintiff in a suit in equity against a town was entitled to an injunction against the defendant's discharging on the plaintiff's land water originating on the defendant's land and channelled to the plaintiff's land through a drainage system on land of a third owner, where it appeared that the water from the defendant's land could be "diverted . . . to another system" and the plaintiff's land thereby relieved of it. [242]

In a suit in equity to enjoin discharge onto the plaintiff's land of water channelled thereto from the defendants' lands through a drainage system, the effective time of injunctive relief should be such as to give the defendants suitable opportunity to rectify the situation. [242–243]

In the circumstances of a suit in equity seeking injunctions against discharge onto the plaintiff's land of water channelled thereto from the defendants' lands through a drainage system, and damages, this court, upon reversing the final decree and ordering further proceedings in the trial court to determine the appropriate injunctive relief and damages, also directed the trial court to retain jurisdiction of the suit and the parties to deal with further issues which might arise in the matter. [243]

BILL IN EQUITY filed in the Superior Court on June 10, 1960.

The suit was heard by *Tomasello, J.,* on a master's reports.

*Daniel Needham, Jr.,* for the plaintiff.

*Louis Kobrin* for Pinewood Builders, Inc.

*Cornelius J. Sullivan,* Town Counsel, for the Town of Framingham, submitted a brief.

SPIEGEL, J. This is a bill in equity to enjoin the defendants from "discharging and throwing water in an artificial stream on the land" of the plaintiff and for damages. The suit was referred to a master. Each of the parties filed objections to the master's report. The court below entered an interlocutory decree in which the exceptions of all the parties were overruled and various motions filed by the "several parties" were denied and recommittal to the master for further findings as follows was ordered:

"1. That further facts be reported after taking additional testimony, if required, for the purpose of applying a correct measure of damages in accordance with the principle of establishing damages suggested in *Belkus* v. *City of Brockton,* 282 Mass. 285, more particularly, to report facts which would indicate to the Court whether — if, the injury

is reasonably curable by repairs, the reasonable expenses of repairs is less than the diminished market value.

"2.   That the master report facts which would indicate to the Court — if the act is continuous, but subject to termination by the later act of the . . . [defendants], the lessened rental value while the injury continued to the date of the bill."

None of the parties appealed from this decree.

After the master's report on recommittal each of the parties filed objections to that report which, under Rule 90 of the Superior Court (1954), are treated as exceptions. An interlocutory decree was entered overruling the exceptions of the plaintiff and the defendant Pinewood Builders, Inc., sustaining the exceptions of the town of Framingham, and ordering the master's report and report on recommittal "confirmed as so modified." Pinewood Builders, Inc. (hereinafter referred to as Pinewood), appealed from this decree. The court entered a final decree ordering Pinewood to pay to the plaintiff $21,750 plus interest and in "all other respects . . . dismissed" the bill, from which the plaintiff and Pinewood appealed.

A summary of the material facts found by the master follows. In 1931, the plaintiff purchased a parcel of land consisting of about forty-three acres in the towns of Framingham and Sudbury. In 1953, the plaintiff sold a portion of this land to the Lexington Sand & Gravel Co. and as a part of the transaction granted that company an easement for five years to ". . . dump waste water and waste material upon, and . . . erect, maintain, and operate . . . equipment" on a part of the plaintiff's remaining land. By deeds dated January 10, 1959, and May 15, 1959, the Lexington Sand & Gravel Co. "transferred its title in the land originally belonging to" the plaintiff to the defendant Pinewood. The parcel of land to which the plaintiff retained title comprised approximately fourteen and a half acres. In 1931, all of the land was in a "wild and undeveloped state" and "had a tendency to become damp and wet as a result of the flood of natural water onto it from sur-

rounding land including land subsequently owned by the''
defendant Pinewood. However, about 1932, the plaintiff
made certain improvements to the land, chiefly in the form
of draining ditches which resulted in drying up the land
with the exception of a ''wet spot'' of about 1,000 square
feet. Except for this ''wet spot,'' the land would remain
dry and usable in its natural state if the adjacent land now
owned by the defendant Pinewood were left in its ''natural
undeveloped'' state.

In 1959 and 1960, immediately after its purchase of the
land from the gravel company, Pinewood embarked upon a
project to develop its land, together with some land ad-
jacent thereto, for several hundred housing units ''under
the name of Woodfield I, II, and III.'' Pinewood, with the
approval and permission of the planning board of Framing-
ham and the permission of the town engineer and members
of the engineering department, then graded the land so that
it gradually sloped in a descending plane toward the plain-
tiff's land. As a part of this authorized plan a surface
water drainage system was installed which caused all of the
surface water from the area to be collected into the drains
and then to be discharged on the land of one Raymond from
which it spilled over onto the plaintiff's land. Upon the
complaint of the plaintiff, Pinewood conferred with a rep-
resentative of Framingham and ''it was determined that it
would be better for all parties . . . to defend one law suit
instead of two.'' As a result thereof a new drain was con-
structed which discharged the surface water at the bound-
ary of the plaintiff's land alone, avoiding the Raymond
property.

There never was any natural watercourse ''existent''
from Pinewood's land running over the plaintiff's land.
Pinewood's construction ''created a substantial additional
burden'' on the plaintiff's land making the plaintiff's drain-
age system inadequate to drain off the water and this re-
sulted in water backing up and flooding the plaintiff's land.
Pinewood's actions were ''intentional,'' ''deliberate,'' and
''tortious.'' It ''knew the full effect and result of its con-

struction and location of the exit point of the drainage system of surface water'' from Woodfield I, II, and III. Part of the surface water emptying onto the plaintiff's land through Pinewood's system came from land belonging to Framingham and this water "can be adequately diverted from the present system to another system in such fashion that'' the plaintiff's land "will be free of any future flow from . . . Framingham's land.'' A deed from Pinewood to one of the lot owners, typical of the hundreds granted, revealed that Pinewood retained ownership of the streets and drains in the development. The cost of correcting the condition by a proper drain under the plaintiff's land was determined to be $28,130.60.

In his supplemental report the master found that twelve and a half acres of the plaintiff's land were either flooded or affected by the flooding, and the value of that land to be $21,750, which figure was adopted by the court in its final decree.

1. The plaintiff contends that he is entitled to injunctive relief against both defendants and not merely damages from Pinewood. Subject to the possibility of certain additional findings of fact to which we shall refer later in this opinion we hold that injunctive relief should be decreed against Pinewood. Without the pretext of an easement or other legal right, Pinewood has artificially collected, channeled, and discharged its surface waters onto the plaintiff's land. Such action constitutes a continuing trespass. *Manning* v. *Woodlawn Cemetery Corp.* 245 Mass. 250, 251. *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 296. *Miller* v. *Darby,* 336 Mass. 243, 246. An intentional and continuing trespass to real estate may be enjoined. *Ottavia* v. *Savarese,* 338 Mass. 330, 336. Damages are usually inadequate because the plaintiff is not to be compelled to part with his property for a sum of money. "The principal reason for this is that which lies at the foundation of the jurisdiction for decreeing specific performance of contracts for the sale of real estate. A particular piece of real estate cannot be replaced by any sum of money, however large,

and one who wants a particular estate for a specific use, if deprived of his rights, cannot be said to receive an exact equivalent or complete indemnity by the payment of a sum of money. *Lynch* v. *Union Inst. for Sav.* 159 Mass. 306, 308.'' *Ottavia* v. *Savarese,* 338 Mass. 330, 336. To determine that an injunction is unavailable is to enable the encroaching party to take rights in realty from the owner at a valuation. This is a power properly limited to eminent domain proceedings. *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 109. *Ottavia* v. *Savarese, supra,* 336.

Injunctive relief has been denied in exceptional circumstances such as those found in *Gray* v. *Howell,* 292 Mass. 400, and *Triulzi* v. *Costa,* 296 Mass. 24. See *Caputo* v. *Board of Appeals of Somerville,* 330 Mass. 107, 112; *Tehan* v. *Security Natl. Bank,* 340 Mass. 176, 182; *Nassif* v. *Boston & Maine R.R.* 340 Mass. 557, 566.

The only finding apparent to us in the present state of the record for denying injunctive relief is to the effect that a permanent injunction "may cause hardship to several hundred bona fide and innocent purchasers of property in Woodfield I, II and III." This finding, while inconclusive, raises a question which should be answered before a decree for injunctive relief becomes effective. It may be that the only alternative to the use of the plaintiff's land in the building of a drain is the uprooting or destruction of some property of innocent purchasers of lots from Pinewood. It is conceivable that there is no other physically possible means of draining the property of bona fide purchasers or that the cost of an alternative is outrageously disproportionate to the benefit to be derived by the plaintiff.

Further hearings before the master or in the Superior Court, as the court may decide, must be held to ascertain whether there are such offsetting equities in this case.

2. If an injunction is granted a different rule for damages is required. Neither the fair market value of the plaintiff's "affected" land nor the cost of constructing a remedial drain under his property, the only measures for damages found below, will properly compensate the plain-

tiff. Since his realty presumably will be returned to the status it enjoyed prior to the trespass involved, he should be compensated only for such harm as he may have suffered while the trespass continues. ''If the injury is continuous but subject to termination by later act of the wrongdoer, the measure is the lessened rental value while the injury continues. *Diamond* v. *North Attleborough,* 219 Mass. 587. *Sturtevant* v. *Ford,* 280 Mass. 303, 317, 318.'' *Belkus* v. *Brockton,* 282 Mass. 285, 288. If it becomes necessary to make use of the plaintiff's land in the construction of a drain the award to the plaintiff should, of course, include damages for the drainage easement.

3. The remaining issue to be determined is whether the plaintiff is entitled to injunctive relief against Framingham. Surface waters from land belonging to Framingham are being channeled through the Pinewood surface water drainage system and discharged upon the plaintiff's land. This, too, is a continuing trespass and the plaintiff prays that Framingham be restrained from ''discharging and throwing water'' on his land. The master found that such water ''can be adequately diverted from the present system to another system in such fashion'' that the plaintiff's land ''will be free of any future flow from . . . Framingham's land.'' The plaintiff is entitled to have the town enjoined from the continuation of the trespass. *Turner* v. *Oxford,* 338 Mass. 286, 289. *Lenari* v. *Kingston,* 342 Mass. 705, 709. No contention is made that Framingham is liable in damages.

4. Admittedly, the factual situation before us is unusual. Pinewood may argue that its position is the result of the action of the planning board of Framingham and, therefore, Pinewood should not be held responsible. While this may be Pinewood's reason for the continuing trespass, and while it may have no ill intent, nevertheless, this does not alleviate the damage to the plaintiff caused by the drainage system.

5. Litigation on this issue cannot be permitted to continue ad infinitum. Permanent injunctive relief is required

against Framingham and may also be required against Pinewood. However, a decree granting immediate injunctive relief will not give either of the defendants an opportunity to comply therewith. A period of time will be required for the construction necessary to rectify the existing situation. It is for the court below to fix the length of time which should elapse before any injunction is put into effect. It will also be necessary to determine the amount of damages, payable by Pinewood, to which the plaintiff is entitled pursuant to the rules hereinabove enunciated. Evidence may be required concerning the time to elapse before the injunction or injunctions to be granted are to take effect and the amount of the damages to be awarded. In the event of further hearings before the master the judge is to determine to what extent the reports of the master are to be set aside.

6. Conceivably, additional complications may arise which will present issues for the judge's determination. To avoid the necessity of additional litigation over substantially the same issues, we think it advisable that the Superior Court retain jurisdiction of the case and the parties. "Such retention of jurisdiction is not unusual." *Nassif* v. *Boston & Maine R.R.* 340 Mass. 557, 566.

7. We perceive no point in enumerating the exceptions of Pinewood to the master's supplemental report. Those which merited discussion have been dealt with in this opinion.

8. The interlocutory decrees are reversed; the final decree is reversed; and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*