Towne *v.* Campanelli.

———

FRANCIS P. TOWNE *vs.* MICHAEL CAMPANELLI & another, trustees
(and a companion case[1]).

Middlesex.     April 2, 1963. — May 7, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Trespass. Equity Jurisdiction,* Trespass.

In the circumstances, where a landowner in excavating, filling and levelling his land excavated and removed some material from adjacent land of another owner, the adjacent owner in equity had an adequate remedy against the trespassing landowner by damages and was not entitled to a mandatory injunction for restoration of his land to its condition before the trespass.

Two BILLS IN EQUITY filed in the Superior Court on November 23, 1960.

The plaintiffs appealed from interlocutory decrees entered by *Paquet, J.,* and final decrees entered by *Vallely, J.*

*Louis R. Sandini* for the plaintiffs.

*Louis Kobrin* for the defendants.

---

[1] The companion case is by John Martin against the same defendants.

SPIEGEL, J.   These are separate bills in equity seeking injunctive relief and damages from the defendants who own land adjacent to land of each of the plaintiffs.   The suits were referred to a master to be heard together.   The plaintiffs appealed from interlocutory decrees entered by a judge of the Superior Court denying motions by the plaintiffs to recommit to the master, overruling the objections (treated as exceptions) of the plaintiffs to the master's reports and confirming the reports, and from final decrees awarding the plaintiffs damages but not injunctive relief.

We summarize the material facts found by the master in the plaintiff Towne's case.   Differences between this report and that in the plaintiff Martin's case will be pointed out at the end of this summary.

On October 30, 1956, Towne was the owner of a dwelling house and lot of land on Elm Street in the town of Framingham.   The rear of his premises was 121.65 feet wide and adjoined a large lot of land owned by the defendants, which on that date was vacant land, sloping downward from the line of Towne's and the defendants' property for several hundred yards where it became level.   Towne's land, as it "ran back" from Elm Street toward the division line of the properties, was substantially level until it almost reached the defendants' property whereupon it dipped sharply. The defendants took title to their property on August 31, 1956.   "[O]n October 30, 1956, [they] began to level the land by excavating the higher portions and using the sand and gravel so removed to fill in the lower portions of their property, a large part of which was swamp land, for the purpose of developing a shopping center with a large parking lot."   In carrying out this excavation the defendants extended their digging by means of power machines over the line of Towne's property for varying distances ranging from seven and one half to ten feet along the entire division line of the properties.   They removed therefrom three large trees, some brush, and 343 cubic yards of topsoil, sand, and gravel, some of which was used as fill on their own land.   The excavation left an open embankment sloped "at

an angle.'' After the excavation was finished, the ground level of the defendants' land, at the division line, was lower than Towne's, the drop at one side measuring thirteen feet and at the other side ten feet. The excavation ''did not result in any cave-ins, erosion or wasting away of any part of . . . [Towne's] property, and . . . no damage was done to . . . [his] property by any lack of lateral support . . . . [D]uring the years which have elapsed since the original excavation, a portion of this bank has become overgrown with weeds and grass which have eliminated the possibility of any erosion in the future.'' As a result of the defendants' activities the value of Towne's land was $1,000 less than it was before the acts were committed, and the value of the materials removed from his property was $34.30.

The plaintiff Martin's land was adjacent to and slightly larger than Towne's land. The trespass to Martin's land was in almost the identical manner as the trespass to Towne's land except that the value of the materials removed was $20.80 and the diminution in value was $500. The final decrees entered below awarded the plaintiffs the amounts of damages found by the master, plus interest.

The contentions advanced by the plaintiffs are the same and are consolidated in a single brief. The substance of their position appears to be that a mandatory injunction should have been issued ordering ''their land restored to the condition it was in before it was disturbed'' because an award of money damages alone forces the plaintiffs to make an involuntary sale of part of their land. The plaintiffs cite Chesarone v. Pinewood Builders, Inc. 345 Mass. 236, 240–241, as authority for their position. The facts in that case, however, are readily distinguishable from those in the instant suits. The defendants in the Chesarone case had constructed a drain which discharged ''surface water'' onto the plaintiff's land, thereby flooding it. The trespass there was a ''continuing'' one which effectively denied the plaintiff the full use of his land and an injunction was a proper remedy to protect his right to the future enjoyment of his land. Unlike that case, the master's reports before us

point out that the rights of the plaintiffs to the future use of their land are in no way jeopardized. Other cases cited by the plaintiffs, such as *Kershishian* v. *Johnson*, 210 Mass. 135, 139, are equally distinguishable. In the *Kershishian* case the defendant wrongfully constructed a building partially on the plaintiff's property. There, too, the propriety of injunctive relief was apparent in order to safeguard the landowner's right to the unhindered future use of his land and prevent a "taking" by means of money damages by the trespasser. In the instant case, although a trespass had taken place on the plaintiffs' land in the course of which soil was wrongfully removed, it was not a "taking" of their land in the sense that the word is used for eminent domain purposes. The original boundaries of the plaintiffs' land are quite fixed and remain unmodified. The soil wrongfully taken and the diminution in value caused by this encroachment have been compensated for by the application of the proper rule of damages. *Belkus* v. *Brockton,* 282 Mass. 285, 287–288.

The interlocutory and final decrees are affirmed. The defendants are to have costs of these appeals.

*So ordered.*