Salim AOUDE, Plaintiff, Appellant,

v.

MOBIL OIL CORPORATION, et al.,
Defendants, Appellees.

No. 88–1625.

United States Court of Appeals,
First Circuit.

Nov. 3, 1988.
Decided Dec. 8, 1988.
Rehearing Denied Dec. 30, 1988.

David Berman with whom Berman &
Moren, Lynn, Mass., was on brief, for
plaintiff, appellant.

Robert M. Gault with whom Andrew N.
Nathanson, Mintz, Levin, Cohn, Ferris,
Glovsky and Popeo, P.C., Boston, Mass.,
and Charles B. Straus, III, New York City,
were on brief, for defendants, appellees.

Before BREYER and SELYA, Circuit
Judges, and CAFFREY,* Senior District
Judge.

SELYA, Circuit Judge.

Plaintiff-appellant Salim Aoude, defend-
ant-in-counterclaim, polemizes mightily
against a preliminary injunction issued by
the United States District Court for the
District of Massachusetts in favor of de-
fendant-appellee-counterclaimant Mobil Oil
Corporation (Mobil). In the end, Aoude
huffs and puffs, but he fails to blow down
the edifice which the district court compe-
tently constructed from the facts of record
and the applicable law. *Cf. The Three Lit-*

* Of the District of Massachusetts, sitting by desig-    nation.

*tle Pigs* 16–18 (E. Blegvad ed. 1980) (house three).

## I

The material facts brook little disagreement. Plaintiff, a successful entrepreneur, rented a service station on Turnpike Road, Shrewsbury, Massachusetts from defendant. He operated it for several years under a Mobil franchise. Aoude knew that Mobil ordinarily frowned upon a dealer leasing more than one station at a time. He also knew that Mobil routinely provided in the operative documents for prior written consent as a precondition to effective alienation of a franchise or lease.

John Monahan operated another Mobil station in Shrewsbury, located on Maple Avenue. When Monahan decided to bow out, plaintiff smelled the wafting breeze of opportunity. He haggled with Monahan for many weeks, knowing full well that he would need Mobil's written approval in order to cinch a deal. Aoude and Monahan kept these negotiations in the bosom of the lodge; it was only after the two reached a firm accord that plaintiff informed Bruce McFarland, defendant's marketing representative, of his takeover intentions. Aoude and McFarland arranged to meet on June 16, 1987.[1] Beforehand, unbeknownst to Mobil, Aoude and Monahan had signed and substantially performed a formal written agreement. Plaintiff took possession of the station on the weekend of June 13–14, began to operate it for his own account, received title to the equipment and personalty from Monahan, and paid the agreed consideration in full ($90,000). The payment was not conditioned on Mobil's approval.

On June 16, Aoude conferred with McFarland and Michael Urbonas, McFarland's immediate superior. Aoude understood that neither man could sanction the transaction; the decision necessitated ascension to a higher rung of the corporate ladder. Following the meeting, Mobil commenced the intracorporate review process through which it was to determine whether to allow the transfer. Plaintiff, betimes, had costumed himself in grandmother's clothes, so to speak, embarking on a cover-up to camouflage the fact that his deal with Monahan was a *fait accompli*. Notwithstanding that Aoude had begun to operate the station to his own behoof, he arranged to have all transactions with Mobil continue in Monahan's name and dealer number, and to have all payments to Mobil funnelled through Monahan's checking account.

At this stage of our narration, factual disputes begin popping up in various places. Most are beside the present point. The key conflict is as to what McFarland said—or not—after the initial meeting. Plaintiff swears McFarland told him on June 19 that Mobil had approved the transfer, and plaintiff claims to have acted on this assurance. Defendant denies the averment whilst accusing Aoude of shady business tactics and worse. We do not think we need to resolve this, or other, contradicted facts. It suffices that on July 8 the axe fell: Aoude concedes that Judith Schultz, the district manager, informed him then that Mobil would not give its assent.

Plaintiff was not about to let his prey slip through a contractual crack. Although Monahan repeatedly offered to return the money and rescind the transaction, Aoude kept control of the station. Monahan fronted by holding himself out as the dealer. In late 1987, plaintiff sued Mobil (Civ. No. 87–3037–N), attaching to the complaint what purported to be a copy of the Aoude/Monahan purchase agreement. After discovery proved that the agreement was a fake,[2] Mobil notified Monahan that,

---

1. There is a fribbling disparity: defendant contends the meeting occurred on June 16, 1987; plaintiff fixes it one day later. The discrepancy is of no moment. We use the earlier date because the district court found the meeting to have taken place then. *See Aoude v. Mobil Oil Corp.*, Civ. Nos. 87–3037–N, 88–1044–N, slip op. at 4 (D.Mass. Aug. 5, 1988).

2. In his discussion with Schultz, plaintiff inflated the price paid Monahan (presumably to give him better leverage in dealing with Mobil). The next day, at Aoude's instigation, he and Monahan prepared an ersatz agreement (inserting a price of $175,000), backdated it, and signed it. Aoude now admits that the document was bogus.

because of his complicity in the fraud, it was terminating the franchise. Aoude responded by filing a second action (Civ. No. 88–1044–N) which substantially replicated the allegations of the earlier one, but substituted an ostensibly genuine purchase contract for the bogus agreement. Mobil loosed a pack of pleadings and motions in reply.

Among other things, both sides requested interim injunctions. Aoude sought to restrain Mobil from terminating the lease-cum-franchise. Mobil, pursuant to a counterclaim, asked that Aoude be banned from continuing to trespass at the Maple Avenue site. On June 2, 1988 the district court acted. In a brief order, it denied Aoude's motion for preliminary injunctive relief and granted Mobil's cross-motion. This appeal followed.[3]

## II

■ The criteria for preliminary injunctive relief are not much in doubt. *See, e.g., Hypertherm, Inc. v. Precision Products, Inc.,* 832 F.2d 697, 699 & n. 2 (1st Cir.1987); *Massachusetts Ass'n of Older Americans v. Sharp,* 700 F.2d 749, 751 (1st Cir.1983); *Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982); *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). Those criteria can be summarized as follows:

1. The likelihood of merits' success;

2. The potentiality for irreparable injury.

3. A balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and

4. The effect on the public interest of a grant or denial of the restrainer.

In the case at bar, it is perfectly clear that the trial court applied the appropriate standard. *See Aoude v. Mobil Oil Corp.,* Civ.

Nos. 87–3037–N, 88–1044–N, slip op. at 8 (D. Mass. Aug. 5, 1988).

We need not dwell on the substance of the district court's determination. Given the facts recounted above, Aoude has bitten off more than he can wolf down: the decision to issue an interim injunction seems well within the court's considerable discretion. On the substance of the case, therefore, we find interlocutory relief to be supportable for substantially the reasons set forth in Judge Nelson's trenchant opinion. *See id.* at 8–12. We need only add three brief comments as to this aspect of the matter.

### A.   *Enjoining a Trespass.*

Plaintiff tries to convince us that Massachusetts law does not allow courts to enjoin a trespass. We believe it indisputable that, in the Commonwealth as elsewhere, a continuing trespass on real property—such as the district court supportably found that Aoude was perpetrating—can properly be enjoined. *See, e.g., Chesarone v. Pinewood Builders, Inc.,* 345 Mass. 236, 240, 186 N.E.2d 712 (1962); *Doody v. Spurr,* 315 Mass. 129, 134, 51 N.E.2d 981 (1944); *Boston & Maine Railroad v. Sullivan,* 177 Mass. 230, 232, 58 N.E. 689 (1900). The venerable case upon which Aoude relies for a contrary proposition, *Washburn v. Miller,* 117 Mass. 376 (1875), does not assist his cause. For one thing, the trespass in *Washburn* was not a continuing one; for another, the *Washburn* plaintiff was not threatened with irreparable harm. *Id.* at 378. Indeed, Justice Devens's opinion is prefaced with the following assurance:

> It is not doubted that an injunction could properly be issued to restrain one from the commission of an alleged trespass where the damage liable to be occasioned thereby would be irreparable....

*Id.* at 377. Aoude's argument is meritless.

### B.   *Altering the Status Quo.*

Plaintiff's grievance that the injunction altered the status quo comprises little more than a complaint about whose ox was

---

**3.** When the district court ruled, it assured the parties that a "memorandum [would] follow."

Some two months later, that promise was kept. *See Aoude v. Mobil Oil Corp., supra* note 1.

gored. To be sure, the order ousted Aoude from Maple Avenue—but only after the district court found that "he had no business being on the station." *Aoude, supra,* slip op. at 12. By removing the trespasser, the court in effect restored the status quo, that is, "the last *uncontested* status which preceded the pending controversy." *Westinghouse Elec. Corp. v. Free Sewing Machine Co.,* 256 F.2d 806, 808 (7th Cir.1958) (emphasis supplied); *see also Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 809 (9th Cir.) (similar), *cert. denied,* 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963). In any event, the status quo doctrine is one of equity, discretion, and common sense, not woodenly to be followed. On the peculiar facts of this case, the preliminary injunction is not vulnerable to attack even if it is seen as changing the status quo.

### C. *Waiver.*

The ululation that Mobil forfeited its entitlement to demand the right of prior written approval consists more of sound than substance. As we have observed before, "the Massachusetts standard for waiver is an uncompromising one." *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 992 (1st Cir.1988). To establish waiver, it was incumbent upon Aoude to show "clear, decisive, and unequivocal conduct on the part of [defendant's] authorized representative ... indicating that [defendant] would not insist on adherence to the [provision]." *Glynn v. City of Gloucester,* 9 Mass. App.Ct. 454, 462, 401 N.E.2d 886, 892 (1980). On this record—and having mind that the burden of proving waiver devolves upon the party asserting it, *see Paterson–Leitch,* 840 F.2d at 992—we cannot say that the district court erred in resolving this issue, preliminarily, against appellant.[4]

**4.** We do not comment on the asseveration that Mobil was estopped from enforcing its reserved right of written approval. The district court limned four separate reasons why estoppel would likely fail to carry the day. *Aoude, supra,* slip op. at 8–11. Without discussing them all, we need only note that one of these rea-

### III

Despite the fact that we find the preliminary injunction abundantly grounded in the record, we must go further. Appellant has raised a three-part procedural challenge, claiming that the order was issued (1) without a hearing, (2) in the absence of contemporaneous findings, and (3) devoid of a bond stipulation. The assertions are factually accurate; it remains for us, however, to consider their legal implications.

### A. *Lack of a Hearing.*

The district court granted the contested injunction without convening an evidentiary hearing or hearing oral argument. Normally, we would look askance at such a praxis. As a general rule, where issues of fact are disputed, an evidentiary hearing is a highly desirable prelude—if not a necessary concomitant—to the granting of an interlocutory injunction. *See Syntex Ophthalmics, Inc. v. Tsuetaki,* 701 F.2d 677, 682 (7th Cir.1983); *Forts v. Ward,* 566 F.2d 849, 851 (2d Cir.1977). Yet an evidentiary hearing is not an indispensable requirement when a court allows or refuses a preliminary injunction. *See, e.g., Syntex Ophthalmics,* 701 F.2d at 682 (evidentiary hearing not mandated where "evidence already in the district court's possession" enabled it to reach reasoned conclusions); *Town of Burlington v. Department of Education,* 655 F.2d 428, 433 (1st Cir.1981) (evidentiary hearing not essential where parties exercised ample opportunity to make written submissions and plaintiff failed to submit affidavits or make offers of proof); *SEC v. Frank,* 388 F.2d 486, 490 (2d Cir.1968) (evidentiary hearing not compulsory for issuance of preliminary injunction in instances where "[t]he taking of evidence would serve little purpose"). Rather than accepting Aoude's invitation to sponsor some inflexible rule, we prefer a more pragmatic approach.

sons—the lack of detrimental reliance—seems virtually unarguable in light of the fact that plaintiff and Monahan consummated and substantially performed their behind-the-back bargain before McFarland is alleged to have made any verbal commitment whatever.

Considering time constraints which obtain in the Fed.R.Civ.P. 65 milieu, the burdens imposed on the federal judiciary may sometimes render live evidentiary hearings impracticable. Moreover, the priority for such hearings is relatively low in certain cases; sometimes the critical facts are undisputed or the availability of documented evidence dispels the need for taking testimony. Even where Rule 65 factfinding is desirable, it is designed to be tentative—"preliminary"—in nature; as we see it, the term "preliminary injunction" is not the result of a random labelling process, casually adopted. The web of conclusions upon which a preliminary injunction rests are "statements as to probable outcomes," nothing more. *Goyco de Maldonado v. Rivera*, 849 F.2d 683, 686 (1st Cir.1988); *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 238 (1st Cir.1986) (en banc), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). Because final resolution of factual conflicts is reserved to time of trial (absent a stipulation by the parties or an order of court merging the hearings on preliminary and permanent injunctive relief, *see* Fed.R.Civ.P. 65(A)(2)), the judge must be accorded some reasonable leeway in truncating the proceedings.

For these reasons, we think that in certain settings a matter can adequately be 'heard' on the papers. *Cf. Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 411 (1st Cir.1985) (Fed.R.Civ.P. 56's "reference to a 'hearing' does not necessarily imply oral argument"). The test should be substantive: given the nature and circumstances of the case, did the parties have a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions? If the question is close and time permits, then doubt should be resolved in favor of taking evidence.

■ Here, sufficient opportunity was afforded. The original case had been pending for some months; the district judge was obviously familiar with it; and the parties had made many submissions. When the district court passed upon the cross-motions, it had before it a record equally as informative as that produced at most Rule 65 evidentiary hearings: detailed briefs, affidavits from six of the principal witnesses, hundreds of pages of testimony from Aoude and Monahan on deposition, and more than two dozen documentary exhibits. Unlike the usual case, the litigants had enjoyed the benefits of extensive discovery by the time the injunction motions were filed. Though there was considerable controversy as to what occurred after June 16, the critical facts as to what transpired earlier were not genuinely in dispute. Given this panoply of circumstances, we believe that plaintiff had a fair opportunity to present relevant information to the court. There was no reversible error on this score. *See Syntex Ophthalmics, supra*, 701 F.2d at 682; *SEC v. G. Weeks Securities, Inc.*, 678 F.2d 649, 651 (6th Cir.1982) (interim injunction may issue without oral testimony if court has "before it adequate documentary evidence upon which to base an informed, albeit *preliminary* conclusion") (emphasis in original); *Socialist Workers Party v. Illinois State Board of Elections*, 566 F.2d 586, 587 (7th Cir.1977) (per curiam) (denial of evidentiary hearing before issuance of injunction harmless where appellants have not "demonstrated that anything that could have arisen in a factual hearing would have altered the result"), *aff'd*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *SEC v. Frank, supra*, 388 F.2d at 490–91; *Ross–Whitney Corp. v. Smith Kline & French Laboratories*, 207 F.2d 190, 198 (9th Cir.1953) ("a preliminary injunction may be granted upon affidavits"); *cf. HMG Property Investors, Inc. v. Parque Industrial Rio Canas, Inc.*, 847 F.2d 908, 914–15 (1st Cir.1988) (district court could fix provisional remedy without convening evidentiary hearing).[5]

---

5. Appellant's complaint that the district court did not hear oral argument on the cross-motions need not occupy us for long. Granting or denying oral argument is discretionary. *See Domegan v. Fair*, 859 F.2d 1059, 1065–66 (1st Cir.1988); *Cia. Petrolera Caribe*, 754 F.2d at 411; *see also* D.Mass.Loc.R. 17(d). Nothing about the motions for injunctive relief was so extraordinary as to hamstring the district court's exercise of its discretion in this case.

## B. *Delayed Findings.*

█ Fed.R.Civ.P. 52(a) requires that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." The district judge failed to comply with this directive when issuing the preliminary injunction in Mobil's favor. This omission, appellant tells us, necessitates reversal.[6] Defendant disagrees; it argues that the later memorandum filed by the judge cured the defect.

We understand that overtaxed district courts, struggling with burgeoning case loads, are often unable to ignore their dockets and generate instant written opinions. We appreciate, too, that Rule 65 hearings frequently arise on an emergency basis and cry out for celerity in the judicial response. In this case, for example, the clock was ticking on Mobil's notice and the court acted four short days before the date fixed for termination of the Maple Avenue franchise. Even such exigencies, however, do not excuse noncompliance with Rule 52(a). Written findings need not be elaborately scripted. Furthermore, if the case is complicated and the press of time is great, the rule supplies a workable solution: "It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence...." Fed.R.Civ.P. 52(a). When a court orders exceptional relief, such as an interlocutory injunction, the parties are entitled to know the basis on which the court presumed to act.

We do not mean to lay down a rigid rule. A district court is certainly entitled to some latitude in this regard. Findings and conclusions may be made in outline form and supplemented later. Or, if the urgency is acute and the court's calendar chock-a-block, some delay in issuing findings would be understandable. Here, the court waited for some two months before delivering its findings. That was simply too long to be acceptable, the circumstances considered.

Though an error was committed, nothing turns on it in this case. While the district court should certainly have made known its findings and conclusions more nearly contemporaneously with the granting of injunctive relief, Aoude was not harmed thereby; he does not claim, for instance, an inability to decipher the order and conform his conduct to it. Nor does he suggest any justifiable anodyne. The usual practice which an appellate court follows when the trial court's findings are insufficient is to remand for a clearer expression. *See, e.g., SquirtCo v. Seven–Up Co.*, 628 F.2d 1086, 1092 (8th Cir.1980); *Complaint of Ithaca Corp.*, 582 F.2d 3, 4 (5th Cir.1978) (per curiam). That would be an empty ritual here: the findings have now been made, and they are more than adequate. As the Supreme Court has noted in kindred circumstances: "It would be useless ... to reverse the order granting the temporary injunction and remand the cause" when the district court has issued findings after the appeal is filed but before it is briefed and argued. *Gibbs v. Buck*, 307 U.S. 66, 78, 59 S.Ct. 725, 732, 83 L.Ed. 1111 (1939). *See also Reinstine v. Rosenfield*, 111 F.2d 892, 894 (7th Cir.1940) (similar). Accordingly, while cautioning the district courts that strict adherence to the Civil Rules is the better practice, we see no point in disturbing the interim injunction on the basis of a now-remedied defect.[7]

## C. *Absence of a Bond.*

█ Aoude argues before us that the district court erred in issuing the preliminary injunction without requiring Mobil to post bond. *See* Fed.R.Civ.P. 65(c) ("[n]o ... preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and

---

6. No claim is made that the injunction itself is inexplicit or that its form is otherwise at odds with the requirements of Fed.R.Civ.P. 65(d).

7. This is not a case where the district court, after an appeal has been taken, attempted to modify or amend earlier findings. In that situation, Fed.R.Civ.P. 52(b) would come into play, and a somewhat different set of considerations would obtain.

damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined"). Yet the district court was not earlier requested to set a bond, so we turn a deaf ear to this plaint. After all, "we have regularly declined to consider points which were not seasonably advanced below." *Clauson v. Smith,* 823 F.2d 660, 666 (1st Cir.1987) (collecting representative First Circuit cases); *see also Clarkson Co. v. Shaheen,* 544 F.2d 624, 632 (2d Cir.1976) (similar; involving Rule 65(c) bond requirement). Because posting of a bond is not a jurisdictional prerequisite to the validity of a preliminary injunction, and because appellant did not raise the matter below, we reject the assignment of error as untimely.[8]

## IV

We need go no further. To the extent that appellant urges other grounds for reversal of the interlocutory injunction, they are either adequately covered by the district court's opinion, or so jejune as not to merit discussion, or both. In particular, the claim that the court below misused its discretion in declining to issue a restraining order in Aoude's favor trenches upon the frivolous.

What appellant labors to portray as a robust haboob is not even a gentle zephyr. The house, we think, is sturdy enough to withstand the prevailing winds.

*The order of the district court granting appellee's motion for a preliminary injunction and denying appellant's motion for the same is affirmed.* Costs in favor of appellee.

---

**8.** Although we need not examine this aspect of the matter further, we note that the problem is likely moot. The record reflects that, after appellant filed his opening brief in this court,

Mobil requested the district court to fix a bond. Judge Nelson set security at $60,000 on August 30, 1988 and Mobil has apparently posted a bond in that amount in district court.