EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Maestros de Puerto Rico, et als.<br>    Peticionarios<br><br>v.<br><br>Sistema de Retiro para Maestros de Puerto Rico, et als.<br>    Recurridos<br>_____<br><br>Educadores/as por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc., por sí y en representación de sus miembros et als.<br>    Peticionarios | 2014 TSPR 8<br><br>190 DPR ____ |

Número del Caso: CT-2014-2


Fecha: 27 de enero de 2014


Comisionado Especial:

        Hon. Ángel R. Pagán Ocasio

Abogados de la Parte Peticionaria:

        Lcdo. Rafael A. Nadal Arcelay
        Lcda. Melissa López Díaz
        Lcdo. Ramón Rosario Cortés
        Lcda. Vanessa Caraballo Santiago

Abogados de la Parte Recurrida:

        Lcda. Alba L. Ortiz Morales
        Lcda. Claudia Juan García
        Lcdo. Rafael Escalera Rodríguez

Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. Tanaira Padilla Rodríguez
        Subprocuradora General

        Lcda. Amarilis Ramos Rodriguez
        Procuradora General Auxiliar

Materia: Certificación Intrajurisdiccional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Asociación de Maestros de Puerto Rico, et als.<br><br>Peticionarios<br><br>v.<br><br>Sistema de Retiro para Maestros de Puerto Rico, et als.<br><br>Recurridos | CT-2014-2<br>CT-2014-3 | Certificación Intrajurisdiccional |
| Educadores/as por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc., por sí y en representación de sus miembros, et als.<br><br>Peticionarios<br><br>v.<br><br>Sistema de Retiro para Maestros de Puerto Rico, et als.<br><br>Recurridos | | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de enero de 2014.

I

Examinada la *Solicitud de certificación intrajurisdiccional* presentada por Educadores por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc. se declara con lugar. Art. 3.002(e) de la Ley Núm. 201-2003, 4 L.P.R.A. sec. 24y; Regla 52.2 (d) de las Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. V. Véase Alvarado Pacheco Y Otros v. E.L.A., 2013 T.S.P.R. 64, 2013 J.T.S. 67, 188 D.P.R. ___ (2013).

Se ordena la consolidación de los casos de epígrafe por tratarse ambos de la misma controversia. Tener en dos foros distintos de manera simultánea dos casos que versan sobre la misma controversia no contribuye a la economía procesal y abre la puerta a la posibilidad de resultados contradictorios. M-Care Compounding et al. v. Depto. Salud, 186 D.P.R. 159, 172 (2012); Vives Vázquez v. E.L.A., 142 D.P.R. 117 (1996). Véase, además, R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 5ta Edición, Lexis Nexis, 2010, sec. 3601, pág. 352. En lo sucesivo, las partes deberán usar este epígrafe en los escritos presentados.

II

A la *Moción de reconsideración* que presentó la Procuradora General, no ha lugar.

Hemos expresado en el pasado que "[e]l *injunction* se ha convertido en el instrumento más eficaz para vindicar los diversos derechos constitucionales protegidos por nuestra Constitución". Noriega v. Hernández Colón, 122 D.P.R. 650, 681 (1988). Véase además D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Programa de Educación Jurídica Continua, Universidad de Puerto Rico, Facultad de Derecho, 1996, pág. 62. Para lograr ese propósito, el Art. 678 del Cód. de Enjuiciamiento Civil, según enmendado por la Ley Núm. 12 de 8 de agosto de 1974, 32 L.P.R.A. sec. 3524, "permite que se dicte una orden de entredicho provisional, *injunction* preliminar o permanente, **ante alegaciones** que de su faz sustancien que alguna persona, so color de autoridad, ha privado a un peticionario de algún derecho garantizado por la Constitución o las leyes de Puerto Rico o de Estados Unidos". R. Hernández Colón, op cit., pág. 532. (Énfasis suplido.) Véase, además, Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 357 (1988).

Como se deduce de la norma antes citada, el Poder Judicial tiene la facultad de emitir un *injunction* cuando **una demanda contiene alegaciones** tan serias, sustanciales, difíciles y dudosas que la convierten en materia prima para un buen litigio. R. Hernández Colón, op. cit., pág. 539. Por esa razón, se ha establecido con total corrección que en casos en los que se alega una violación constitucional "no es necesario demostrar daño irreparable". Íd. Véase, además, 11a Wright & Miller, Federal Practice and Procedure, sec. 2948.1. Por eso, se ha resuelto que es innecesario celebrar una vista evidenciaria como requisito previo para emitir un *injunction* preliminar cuando no existen controversias de hechos materiales. Aoude v. Mobil Oil Corp, 862 F. 2d 890 (1er Cir. 1988); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197 (C.D. Cal. 2007). Véase además 11a Wright & Miller, op cit., sec. 2949.

Al analizar con sumo cuidado el expediente de este caso, concluimos que la demanda que presentaron los peticionarios contiene alegaciones serias y sustanciales que ameritaban la expedición del *injunction* preliminar. R. Hernández Colón, op. cit., pág. 539. Además, en su moción de reconsideración la Procuradora General no ha impugnado ninguna de las alegaciones juramentadas que han hecho los peticionarios en este caso. Así pues, no creó una controversia fáctica que impidiera la emisión de nuestra orden provisional de paralización. Aoude v. Mobil Oil Corp, supra; Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., supra.

Así pues, es incorrecta en derecho la aseveración de la disidencia de que no es posible dictar la paralización de la ley antes de que se celebre una vista. De hecho, ese principio es tan obvio que la propia disidencia recomienda la emisión de una orden -**sin vista**- para prorrogar y dejar sin efecto el plazo que concede la Sec. 4(a) de la Ley Núm. 160-2013 para que los maestros afectados notifiquen su renuncia. Por otro lado, la disidencia menciona que las circunstancias en las que se emitió la orden han cambiado porque el paro magisterial concluyó. Eso implica que en verdad la disidencia no ve impedimentos legales para la orden de paralización que dictamos en medio del paro de 48 horas de los maestros del sistema público de enseñanza. Tan solo significa que la disidencia dejaría sin efecto la orden ante el cambio de circunstancias.

Vemos, entonces, que la diferencia en este Tribunal no es en realidad acerca de nuestra facultad para emitir la orden de paralización provisional de la ley, sino más bien sobre su amplitud y alcance. Son muchos los beneficios de haber detenido la entrada en vigor de la Ley Núm. 160-2013. Por ejemplo, a diferencia de otros casos que hemos certificado y que se citan en la disidencia, el *injunction* preliminar permite que este Tribunal analice este caso en un ambiente sosegado. Además, los miles de maestros que se ven afectados por la Ley Núm. 160-2013, no tienen el dilema de tener que tomar decisiones permanentes acerca de su futuro con la presión de la aplicación inminente de la ley. En esencia, el propósito principal de la orden provisional de paralización que emitimos en este caso es mantener el *status quo*. D. Rivé Rivera, op. cit., pág. 21.

III

Por último, vista la *Moción enmendando pedido urgente en solicitud de extensión de términos* que presentó la parte demandante-peticionaria y la *Urgente moción en oposición a solicitud de extensión de término* que presentó la parte demandada-recurrida , se le concede al Comisionado Especial Hon. Ángel Pagán Ocasio, hasta el martes, 28 de enero de 2014, para que nos informe cuánto tiempo adicional necesita

para realizar su encomienda, conforme a la Resolución que emitimos el 14 de enero de 2014.

Notifíquese inmediatamente por <u>fax</u> o teléfono, y por la vía ordinaria.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió un voto particular de conformidad al que se unió el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Kolthoff Caraballo emitió un Voto particular de conformidad. Por otro lado, el Juez Presidente señor Hernández Denton emitió un Voto particular disidente al que se unió la Jueza Asociada señora Fiol Matta. La Juez Asociada señora Rodríguez Rodríguez emitió un Voto particular disidente. El Juez Asociado señor Feliberti Cintrón está inhibido.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Asociación de Maestros de Puerto Rico, *et als.*<br><br>Peticionarios<br><br>v.<br><br>Sistema de Retiro para Maestros de Puerto Rico, *et als.*<br><br>Recurridos | CT-2014-2 | Certificación Intrajurisdiccional |

Voto particular de conformidad emitido por la Jueza Asociada señora Pabón Charneco al cual se une el Juez Asociado señor Estrella Martínez.

En San Juan, Puerto Rico, a 27 de enero de 2014.

Estoy conforme con la Resolución que antecede. Previo a nuestra decisión de paralizar los efectos de la Ley 160-2013, miles de servidores públicos indispensables para el sano desarrollo de esta sociedad, nuestros maestros, se encontraban en una cruel incertidumbre: tomar la decisión irrevocable de acogerse al retiro antes del 15 de febrero de 2014 o continuar trabajando bajo un nuevo sistema. Es por eso que, dada las circunstancias particulares del caso de autos, fue acertada nuestra decisión de paralizar los efectos del estatuto en cuestión y ordenar el trámite extraordinario del caso de epígrafe.

No obstante, toda vez que varios miembros de este Tribunal echan mano a la soga de tecnicismos asfixiantes para darles la espalda a nuestra clase magisterial, me veo obligada a emitir estas breves expresiones.

I

No es la primera vez que este Tribunal toma medidas extraordinarias para resolver casos de alto interés público. Véase *Suárez v. C.E.E. I.*, 163 D.P.R. 347 (2004). Irónicamente, en aquel momento se contó con la anuencia de los compañeros que hoy disienten. Es lamentable que los compañeros disidentes hayan optado por refugiarse entre las líneas de formalidades procesales rígidas para echarle la soga al cuello a nuestros servidores públicos. La verdad es que estos intentan camuflagear una metodología adjudicativa que nuevamente parece reducirse a que resolverán dependiendo del color del cristal con que miraron la controversia. Véase *Alvarado Pacheco y otros v. E.L.A.*, 2013 T.S.P.R. 64, 188 D.P.R __ (2013). (Op. de conformidad emitida por Pabón Charneco, J.). Así pues, se siguen añadiendo capítulos a la saga que no hace mucho presagié. Véase *Trinidad Hernández et al. v. ELA et al,* 2013 T.S.P.R. 73, 188 D.P.R. __ (2013), res. el 25 de junio de 2013. (Op. disidente emitida por Pabón Charneco, J.). Nuevamente, al igual que lo censuré en *Alvarado Pacheco y otros v. E.L.A., supra,* no deja de asombrarme la inconsistencia de varios integrantes de este Tribunal. Lamento que estos compañeros se escondan detrás de un escudo de conveniencia, y aparenten convertirse en una extensión de las ramas políticas de gobierno.

II

Por otro lado, en su voto particular disidente el Juez Presidente señor Hernández Denton elabora prolongadamente en cuanto a los requerimientos de nuestro ordenamiento para la expedición de una orden de *injunction* o *injunction* preliminar. No obstante, como muy bien se discute en la Resolución que antecede, el Juez Presidente está errado en su interpretación de la doctrina de recursos extraordinarios en nuestro ordenamiento. Además, también olvida – o quiere olvidar- que las partes en el caso de autos lo que presentaron ante este Foro fue una moción en auxilio de nuestra jurisdicción. Recientemente reiteramos que "una moción que solicita a un tribunal un remedio en auxilio de su jurisdicción es, en esencia, un llamado a la utilización del poder inherente que tiene todo tribunal para constituir los remedios necesarios que hagan efectiva su jurisdicción y que eviten fracasos en la administración de la justicia". *García López y otros v. E.L.A,* 185 D.P.R. 371 (2012). Véase, además, *Pantoja Oquendo v. Mun. de San Juan*, 182 D.P.R. 101 (2011); *San Gerónimo Caribe Project v. A.R.Pe.*, 174 D.P.R. 640, 654 (2008); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656, 678 (1997). Así pues, se trata de un **remedio en equidad** que emiten los tribunales en el sano ejercicio de su discreción y que **"goza de características afines a otros de similar naturaleza, como lo son el entredicho provisional y el injunction preliminar"**. *Misión Ind. P.R. v. J.P. y A.A.A., Íd.* (Énfasis suplido).

Si bien es cierto que para emitir un remedio en auxilio de jurisdicción se consideran características análogas a las de un *injunction*, los remedios en equidad que se emiten bajo un auxilio de jurisdicción se basan **en el poder inherente de los tribunales apelativos** y no en los formalismos de los requisitos estatutarios exigidos por el Art. 678(3) del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3524, y las Reglas 57.2 (b) y 57.5 de Procedimiento Civil, 32 L.P.R.A. Ap. V. Entiendo que los compañeros disidentes en este caso erraron al analizar la controversia de autos bajo la lupa de tecnicismos procesales, soslayando sin más el principio normativo que ante una moción en auxilio de jurisdicción, los tribunales **tienen el poder inherente para conceder *cualquier remedio* que en equidad proceda**. Véase *García López y otros v. E.L.A*, supra, pág. 382. (Énfasis suplido). En este caso particular, dicho remedio redundó en certificar el caso de autos y paralizar los efectos de la Ley 160-2013 con el fin de evitar que miles de maestros se vieran forzados a tomar una decisión abrupta y permanente sobre su futuro económico antes que se dilucidara la constitucionalidad de dicho estatuto.

Por otro lado, en su disenso el Juez Presidente afirma que al amparo del inciso (a) de la Sección 4 del estatuto en cuestión, este Tribunal tiene la facultad de ordenar a la Oficina de Gerencia y Presupuesto a que prorrogue la fecha límite para que los maestros notifiquen su renuncia. En primer lugar, me parece totalmente errada esta aseveración. No me parece que este Tribunal tenga autoridad para ordenar a la Oficina de Gerencia y Presupuesto a que

realice una función discrecional. Esto sería una intromisión indebida de la Rama Judicial con las otras ramas de gobierno que laceraría los principios más básicos de la separación de poderes. Por eso, para lograr el objetivo que la disidencia propone hay que utilizar la facultad judicial de suspender el efecto de la ley, y con ello, las responsabilidades discrecionales que la ley señala. En segundo lugar, resulta que hasta la disidencia reconoce que es necesario conceder un remedio en equidad similar a la paralización de los efectos de la Ley 160-2013. Me parece que la disidencia es inconsistente en sus aseveraciones con relación al poder de este Foro para conceder remedios en equidad. Paradójicamente, la disidencia propone lo que critica.

Añade además, que dado a que pronto contaremos con el Informe del Comisionado Especial no hay necesidad de paralizar los efectos de la ley dado que dentro de ese marco temporal tendremos la oportunidad de proveer un remedio oportuno antes del 15 de febrero de 2014. A pesar de que sé que este Tribunal hará todo lo posible por atender este asunto con la celeridad que amerita, lo cierto es que nos encontramos ante un caso extremadamente complejo y técnico. Así pues, paralizar los efectos de la Ley 160-2013 nos permitirá analizar sosegadamente el caso de autos sin la presión indebida de un término que podría impedir que ejerzamos nuestra función revisora con la rigurosidad exhaustiva que merece toda controversia que llegue a nuestra consideración. Nuestros maestros merecen como mínimo esa paz mental.

Por otro lado, en su *Urgente Moción de Reconsideración*, el Estado arguye que la Orden emitida por este Tribunal que paralizó los efectos de la Ley 160-2013 "ha tenido un efecto adverso sin precedentes en la estabilidad económica del país". No sería la primera vez que rechazo la utilización de este tipo de argumento supra legal como uno a ser considerado por este Tribunal al momento de evaluar la validez constitucional de un estatuto. Insisto que "esa es una consideración exógena al Derecho que no debe guiar la decisión de los casos de autos. Si el principio de independencia judicial significa algo es que ese tipo de amenaza no puede empañar la labor constitucional de los tribunales en Puerto Rico". *Trinidad Hernández et al. v. ELA et al.*, supra, (Op. disidente emitida por Pabón Charneco, J.).

La disidencia se hace eco de la alegación de la parte recurrida. Al parecer, para los jueces disidentes el único resultado aceptable es la desestimación "fast track" del pleito. De otro modo, siguiendo su lógica, el "efecto adverso sin precedentes en la estabilidad económica del país" sería mayor. Es evidente, entonces, que la disidencia ya adjudicó este caso a favor del gobierno y en contra de los maestros peticionarios. Solo así se explica su inconsistencia al oponerse a la suspensión temporal de los efectos de la Ley 160-2013.

La acción responsable tomada por este Tribunal está enmarcada en la seriedad que requiere afrontar las circunstancias históricas de nuestra Isla. Procedía la paralización y no la improvisación.

III

En fin, reafirmo mi conformidad con la Resolución que antecede. Los miles de empleados públicos que han escogido esta noble profesión y que día a día ejercen la encomiable labor de educar a las futuras generaciones del país merecen mucho más que permanecer en un estado de desasosiego mientras esta Curia atiende la constitucionalidad de la ley impugnada. Así pues, me hago eco de las expresiones emitidas por el compañero Juez Asociado señor Estrella Martínez en su voto particular de conformidad del 14 de enero de 2014 en las cuales destaca la necesidad imperiosa de que "los maestros y maestras conozcan el desenlace final de la validez legal o inconstitucionalidad del estatuto".

Rechazo la posición de la disidencia por que convertiría a la Rama Judicial en una marioneta a la merced de las ramas políticas de gobierno. No puedo avalar un proceder que obliga a nuestros empleados públicos a enredarse en un nudo gordiano y a ser víctimas de la nefasta inconsistencia de varios miembros de este Tribunal. Por todo lo antes dicho, estoy conforme con la Resolución que hoy emitimos.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Maestros de Puerto Rico, *et al.*<br><br>      Peticionarios<br><br>           v.<br><br>Sistema de Retiro para Maestros de Puerto Rico, *et al.*<br><br>      Recurridos | CT-2014-2 Certificación<br>CT-2014-3 Intrajurisdiccional |
| Educadores/as por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc., por sí y en representación de sus miembros, et al.<br><br>      Peticionarios<br><br>           v.<br><br>Sistema de Retiro para Maestros de Puerto Rico, *et al.*<br><br>      Recurridos | |

Voto Particular de Conformidad emitido por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 27 de enero de 2014.

Son varios los intereses de los maestros que se protegen con nuestra orden de paralización. Como muy bien señala la Resolución de la mayoría de este Tribunal, con nuestra paralización "los miles de maestros que se ven afectados por la [ley en controversia] no tienen [ahora] el

dilema de tener que tomar decisiones permanentes acerca de su futuro con la presión de aplicación inminente de la ley". Además, y como también señala la mencionada Resolución, los maestros presentan alegaciones serias y sustanciales en reclamo de derechos reconocidos expresamente por nuestra Constitución.

Por otro lado y además de lo anterior, nuestra orden de paralización ha conseguido apaciguar los ánimos y traer un poco de sosiego y calma a nuestro País. El ambiente de conflicto y controversia suscitado en medio de la aprobación a toda prisa del estatuto, ya había maculado las efemérides navideñas y amenazaba con interrumpir el inicio del semestre escolar. Tal es el efecto positivo que ha tenido nuestra orden de paralización en la atmósfera de este conflicto que ello sin duda ha contribuido a un mejor ambiente en el llamado Comité de Diálogo nombrado por el señor Gobernador.

Sin embargo, no es todo esto lo que me motiva a escribir este Voto particular de conformidad. Me explico.

En mi Voto disidente en el caso sobre el retiro de los empleados públicos según dispuesto en la Ley Núm. 3-2013, Trinidad Hernández et al. v. ELA et al., 2013 T.S.P.R. 73, 188 D.P.R. ____ (2013), advertí que el Estado había convertido el sistema de retiro de estos más de 100 mil servidores públicos en una contradicción de términos: "un sistema de retiro con el cual nadie puede retirarse".[1]

---

[1] Trinidad Hernández et al. v. ELA et al., 2013 T.S.P.R. 73, 188 D.P.R. ____ (2013).

En muchos aspectos el caso que ahora nos ocupa, de su faz y sujeto a la prueba que en su día se presente ante el Comisionado Especial, aparenta ser similar a Trinidad Hernández et al. v. ELA et al., *supra*. En ese sentido, los demandantes tienen una alta probabilidad de prevalecer.

Sin embargo, con todo respeto, lo que sí llama a asombro es que el apreciado Juez Presidente de esta Curia y la apreciada compañera Jueza Asociada señora Fiol Matta le imputen a la mayoría de este Tribunal inconsistencia al paralizar el presente caso. Y es que resulta difícil entender cómo pueden hablar de inconsistencia aquellos que en tiempos de la notoria Ley 7 argumentaron con vehemencia en favor de los servidores públicos, pero los abandonaron **sin explicación alguna** en el caso de la Ley Núm. 3-2013 sobre el retiro de los empleados públicos. Tal acción resulta tan contradictoria como "pensar que alguien te necesita en tiempo de tormenta y creer que no es lo mismo en tiempo de huracán".

Por haber sido el juez ponente en el caso de la Ley 7, Domínguez Castro et al. v. E.L.A. I, 178 DPR 1 (2010), *certiorari* denegado, 131 S. Ct. 152, 562 U.S. ___ (2010), en Trinidad Hernández et al. v. ELA et al., *supra*, expuse la clara diferencia entre un caso y el otro: sencillamente los intereses constitucionales protegidos son distintos. En Domínguez Castro et al. v. E.L.A. I, *supra*, (Ley Núm. 7), la controversia giraba en torno al derecho procesal, derecho sustantivo y el menoscabo **temporero** -con fecha cierta y razonable de finalización- de convenios

colectivos. Mientras que Trinidad Hernández v. ELA, *supra*, (Ley Núm. 3-2013), conllevó la violación de la cláusula constitucional de no menoscabo de obligaciones contractuales por parte **del propio Estado**, al reducir las anualidades de las pensiones de los servidores públicos de forma **sustancial y permanente**. En palabras sencillas, no es lo mismo perder el trabajo que perder la pensión. Como cité en *Trinidad* y en ese contexto, "*Salary and pensions are not synonymous.*"[2]

Ciertamente, en Domínguez Castro et al. v. E.L.A. I, *supra*, este Tribunal -por voz del que suscribe- afirmó el sacrificio que en ocasiones han de hacer "los pocos por el bien de los muchos". Sin embargo, no es lo mismo cuando los pocos se quedan sin trabajo que cuando los muchos se quedan sin futuro. En fin, no hay injusticia más grande que juzgar como iguales aquellas cosas que no lo son.

Por su parte, en Domínguez Castro et al. v. E.L.A. I, *supra*, el Juez Presidente señor Hernández Denton hizo las siguientes expresiones:

> Disentimos del curso de acción que ha seguido hoy una mayoría del Tribunal, pues éste, luego de un trámite judicial apresurado que resulta contrario al debido proceso de ley, elimina los derechos adquiridos sobre sus empleos de miles de servidores públicos, en violación de la prohibición constitucional contra el menoscabo de obligaciones contractuales establecida tanto en la Constitución del Estado Libre Asociado de Puerto Rico como en la Constitución de Estados Unidos... Específicamente, la Opinión que emite el Tribunal para declarar la constitucionalidad de la Ley Núm. 7 de 9 de marzo de 2009 se fundamenta en un expediente judicial

---

[2] Oregon State Police Officers' Ass'n v. State, 918 P.2d 765 (Or. 1996).

desprovisto de la prueba necesaria para resolver de forma adecuada y fundamentada la controversia.[3]

Peor aún, ésta ni siquiera cumple con el ámbito mínimo de protección establecido por la Constitución federal, colocándonos al margen de la normativa que formuló el Tribunal Supremo de Estados Unidos sobre la referida prohibición constitucional en United States Trust Co. v. New Jersey, 431 U.S. 1 (1977), y que adoptó este Tribunal en Bayrón Toro v. Serra, 119 D.P.R. 605 (1987). La necesidad de un expediente judicial completo que contenga prueba que permita evaluar adecuadamente los criterios establecidos en dicha jurisprudencia resulta aún más imperiosa al considerar la magnitud del impacto de la Ley Núm. 7, supra, en los empleados públicos afectados y el efecto que la decisión del Tribunal tendrá en el país.[4]

Prácticamente al final de su Voto disidente en Domínguez Castro et al. v. E.L.A. I, *supra*, el honorable Juez Presidente añadió lo siguiente:

No obstante, el trámite judicial expedito solicitado por el Estado y autorizado por este Tribunal redundó en los parcos expedientes ante nuestra consideración, lo que nos impide evaluar adecuadamente la constitucionalidad del referido plan de cesantías de la Ley Núm. 7, supra, según los criterios pautados por el Tribunal Supremo federal y por este Foro.

El impedimento es más grave aún al considerar el hecho de que nunca se celebró una vista evidenciaria ante un foro judicial que permitiera al Estado demostrar, según lo requiere United States Trust Co. v. New Jersey, supra, que su actuación es necesaria y cumple con los parámetros requeridos para validar este tipo de legislación. Es por tal razón, precisamente, que la mayoría del Tribunal se ve obligada a descansar únicamente en la Exposición de Motivos de la Ley Núm. 7 y da por hechos los datos allí contenidos que, a fin de

---

[3] Voto disidente del Juez Presidente señor Hernández Denton en Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 101 (2010).

[4] Íd.

cuentas, sólo constituyen las alegaciones del Estado. De esta manera, el Tribunal realmente otorga completa deferencia al texto de la ley, abdica a su función judicial y, por lo tanto, priva a las partes de un debido proceso de ley, en clara contravención a lo resuelto en United States Trust Co. v. New Jersey, supra.[5]

Finalmente, el honorable Juez Presidente concluyó con lo siguiente:

La magnitud del impacto de la Ley Núm. 7, supra, sobre los empleados públicos, la economía y la situación social de Puerto Rico nos requiere ser en extremo rigurosos y cuidadosos al adjudicar la controversia ante nos. La decisión de la mayoría del Tribunal hoy no sólo echa a un lado los derechos de los empleados públicos, sino que al hacerlo obvia el procedimiento adecuado y la normativa aplicable establecida tanto por el Tribunal Supremo federal como por este Tribunal. Tratándose del sustento de miles de familias puertorriqueñas, y habiéndole dedicado gran parte de nuestra vida profesional al servicio público, no podemos tomar tan livianamente nuestra responsabilidad de vindicar los derechos constitucionales de la ciudadanía. Por lo tanto, disentimos.[6]

Como lo demuestran las citas anteriores, basta un análisis somero del Voto disidente del honorable Juez Presidente señor Hernández Denton en Domínguez Castro et al. v. E.L.A. I, supra, para concluir, en apretada síntesis, que su posición en contra de la determinación del Tribunal obedeció a que los empleados públicos no tuvieron en esa ocasión la oportunidad de presentar prueba en favor de sus reclamos. El tono de las palabras del Juez

---

[5] Voto disidente del Juez Presidente señor Hernández Denton en Domínguez Castro et al. v. E.L.A. I, supra, pág. 106.

[6] Íd., pág. 111.

Presidente en ese Voto disidente fue uno de indignación y, de hecho, su convencimiento de que esta Curia había errado fue tan grande que llegó incluso a advertir que el caso podría ser revocado por el Tribunal Supremo federal.[7]

Sin embargo, en Trinidad Hernández et al. v. ELA et al., *supra*, (Ley Núm. 3-2013), un caso en el que la cantidad de empleados públicos afectados fue al menos 10 veces mayor y el menoscabo a sus derechos fue mucho peor, el Juez Presidente pareció avalar totalmente aquel "error". En Trinidad Hernández et al. v. ELA et al., *supra*, el Juez Presidente estuvo completamente de acuerdo en confirmar al Tribunal de Primera Instancia que, **sin darle la oportunidad a los empleados públicos de presentar su prueba, o sea, sin que se hubiese celebrado una vista evidenciaria o al menos la estipulación de alguna prueba, desestimó el caso.** De manera que, con la conformidad del honorable Juez Presidente, un caso tan trascendental para los más de 100 mil empleados públicos fue desestimado meramente mediante el mecanismo procesal de la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. V.

De hecho, tal fue la prisa de este Tribunal en ese caso -prisa que como vimos el distinguido Juez Presidente criticó en *Domínguez Castro*- que la Opinión confirmando la acción del Estado en contra de los empleados públicos se emitió mediante el mecanismo de Regla 50, o sea, sin que

---

[7] El honorable Juez Presidente expresó en aquella ocasión: "A nuestro juicio, la Opinión del Tribunal constituye una invitación al Tribunal Supremo de Estados Unidos para que corrija los errores de este Foro, al igual que lo hizo en El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147 (1993)". Como ya es sabido, el Tribunal Supremo federal no acogió el *certiorari* presentado en contra de la determinación de este Foro.

los empleados públicos siquiera tuvieran la oportunidad de presentar su alegato ante este Foro. Un cambio tan evidente de posición solo puede justificarse si se explica razonablemente. De lo contrario, constituye una inconsistencia que provoca dudas -o cuando menos confusión- en cuanto a qué la motivó.

Con relación a la distinguida compañera Jueza Asociada señora Fiol Matta, sus expresiones en *Domínguez Castro* fueron múltiples y variadas. Veamos solo algunas:

> Primero, como ya explicamos, para determinar los hechos relevantes, **la opinión mayoritaria se sustenta exclusivamente en la Exposición de Motivos y acepta, sin prueba, que existe una crisis fiscal** y un problema de gigantismo gubernamental, **así como que no existe otra opción para corregir el déficit estructural del gobierno central**, que no sea el despido de empleados públicos y la suspensión de los derechos laborales. Esto, a pesar de que existen diversos informes o documentos que cuestionan estas hipótesis. **En otras palabras, la mayoría de este Tribunal no tomó en consideración posiciones distintas a la adoptada por la Legislatura, porque no hubo oportunidad para recibir y dirimir prueba en un Foro de Primera Instancia o administrativo.**[8]
> (Énfasis suplido y en el original).

Como vemos, la Jueza Asociada señora Fiol Matta condenó en el caso de la Ley Núm. 7 el que la mayoría de este Tribunal sustentara su determinación solo en la Exposición de Motivos de la ley, aceptara sin prueba la existencia de una crisis fiscal, y aceptara sin prueba el que no existía otra opción para corregir el déficit estructural del gobierno central. Además, la compañera

---

[8] Voto disidente de la Jueza Asociada señora Fiol Matta en <u>Domínguez Castro et al. v. E.L.A. I</u>, *supra*, pág. 118.

señaló que no pudimos considerar "posiciones distintas a la adoptada por la Legislatura, porque no hubo oportunidad para recibir y dirimir prueba en un Foro de Primera Instancia". Sin embargo y como hemos visto, ese prácticamente fue el mismo curso de acción en <u>Trinidad Hernández et al. v. ELA et al.</u>, *supra*. Entonces la pregunta es ¿por qué la distinguida compañera no hizo esos mismos señalamientos en el caso de la Ley Núm. 3-2013? ¿Por que no sólo guardó silencio, sino que avaló con su voto lo que antes condenó?

Por otro lado, en su Voto disidente la Juez Asociada señora Fiol Matta también señaló lo siguiente:

> El análisis que he expuesto en estas apresuradas páginas me lleva a **disentir enérgicamente de la decisión a la que hoy se adhiere la mayoría del Tribunal. Veo con mucha tristeza la posición asumida por la mayoría en esta decisión ante asuntos tan desgarradoramente complejos para la historia de nuestro pueblo.** Ésta es una decisión desinformada, resultado de un improvisado y mal aplicado proceso de certificación. **En ausencia de prueba, la mayoría acaba por deshacer los fundamentos metodológicos de la mejor hermenéutica constitucional y termina en el terreno de la especulación acientífica.**[9] (Énfasis suplido).

Nuevamente, con tono fuerte y clara indignación, la Jueza Asociada señora Fiol Matta critica la determinación de la mayoría de esta Curia. La interrogante que surge ante estas expresiones es si los asuntos traídos por los demandantes en el caso de la Ley Núm. 3-2013 no fueron también "desgarradoramente complejos para la historia de

---

[9] Voto disidente de la Jueza Asociada señora Fiol Matta en <u>Domínguez Castro et al. v. E.L.A. I</u>, *supra*, pág. 156.

nuestro pueblo". Además, ¿cuáles fueron "los fundamentos metodológicos" que llevaron a la compañera en Trinidad Hernández et al. v. ELA, *supra*, a avalar el menoscabo sustancial de los derechos adquiridos de cientos de miles de funcionarios públicos?

Por otro lado, añadió la compañera Jueza Asociada señora Fiol Matta:

> **La Constitución es algo más que un depósito de palabras; es un pacto social maduro entre el Estado y los ciudadanos, que ha sido bordado lentamente y se ha cimentado en décadas de consenso.** Central a este pacto está el valor que le hemos concedido al trabajo en la estructura social de nuestro país. Nuestros tribunales han avalado esta apreciación por muchas décadas. **Hoy, con esta determinación, la mayoría de este Tribunal rompe este pacto social y abandona en el desamparo a miles de ciudadanos que han perdido su modo de vida y mantiene en la inseguridad jurídica a los que aún conservan sus puestos.**[10] (Énfasis suplido).

Ante estas expresiones, es menester preguntarle a la apreciada compañera Jueza Asociada señora Fiol Matta si con la determinación de esta Curia en Trinidad Hernández et al. v. ELA et al., *supra*, ¿no se rompió también ese "pacto social" al que ella correctamente hizo referencia en *Domínguez Castro?;* ¿no se abandonaron y se dejaron también "en el desamparo a miles de ciudadanos que han perdido" no solo su modo de vida, sino **su modo de sustento en la vejez**?

Por último, al final de su ponencia en *Domínguez Castro* la compañera Jueza Asociada señora Fiol Matta le otorga a la mayoría de esta Curia -y a este servidor como

---

[10] Voto disidente de la Jueza Asociada señora Fiol Matta en Domínguez Castro et al. v. E.L.A. I, *supra*, págs. 156-157.

Juez ponente en particular- una estocada realmente dolorosa, producto de su tempestuosa indignación:

> Lamentablemente, después de esta decisión, el derecho constitucional en las escuelas de Derecho se enseñará "antes" y "después" de la Ley Núm. 7, pero no como el derecho de filiación antes y después de nuestra honrosa decisión en Ocasio v. Díaz, 88 D.P.R. 676 (1963), ni como la ley de divorcio antes y después de Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978), casos que ampliaron y fortalecieron los derechos del individuo frente al Estado. Todo lo contrario, **esta decisión será estudiada como aquella que entronizó al Estado como el protagonista principal del sistema frente al ciudadano. Ante esto, yo disiento. No puedo mantener silencio ni ser cómplice de esta enajenada visión.** (Énfasis en el original).

Sin embargo, le pregunto a la compañera Jueza Asociada señora Fiol Matta -con todo el respeto y el aprecio que ella sabe le dispenso- ¿cómo deberá calificar la Academia y la historia del Derecho Puertorriqueño la Opinión de <u>Trinidad Hernández et al. v. ELA et al.</u>, *supra*? Claro, la ventaja que se tiene en <u>Trinidad Hernández et al. v. ELA et al.</u>, *supra*, es que, por haber sido una Opinión *Per Curiam*, nadie tiene que aceptar directamente la responsabilidad. Por otro lado, considerando que en la cita anterior la distinguida compañera mencionó que no pudo "mantener silencio [para] no ser cómplice" de lo que denunció como una enajenación, llama bastante la atención lo "silenciosa" de su conformidad en <u>Trinidad Hernández et al. v. ELA et al.</u>, *supra*.

En conclusión, en ocasiones el cambiar de posición no debe ser visto como inconsistencia, sino como la intención

de no perpetuar lo que se considera un error. Sin embargo, lo que no debe ocurrir es que "tal mutación" ocurra sin explicación alguna. Respetuosamente, los aludidos compañeros tienen la palabra.

Por todo lo anterior, estoy conforme con la Resolución de este Tribunal.


                                        Erick V. Kolthoff Caraballo
                                               Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Maestros de
Puerto Rico, et al.

    Peticionarios

       v.                      CT-2014-2

Sistema de Retiro para
Maestros de Puerto Rico,
et al.

    Recurridos

Voto particular disidente emitido por el Juez Presidente señor HERNÁNDEZ DENTON al cual se une la Jueza Asociada señora FIOL MATTA.

San Juan, Puerto Rico, a 27 de enero de 2014.

El Estado Libre Asociado de Puerto Rico, el Departamento de Educación y el Sistema de Retiro para Maestros de Puerto Rico comparecen mediante la "Urgente Moción de Reconsideración". Nos solicitan que reconsideremos la paralización de la Reforma al Sistema de Retiro de Maestros, ordenada por una mayoría de este Tribunal el 14 de enero de 2014. En esa ocasión, estuvimos de acuerdo con la certificación de este caso y el nombramiento del Comisionado Especial, pues entendimos que ello nos permitiría resolver las controversias planteadas con la rapidez con que siempre hemos atendido los casos adelantados ante nuestra consideración

mediante el recurso de certificación intrajurisdiccional.[11] Sin embargo, no estuvimos de acuerdo con la decisión de paralizar los efectos de la referida Reforma, por entender que no se cumplían los requisitos para suspender los efectos de una ley. Mantenemos nuestra oposición a la paralización de los efectos de la Ley Núm. 160-2013. Por ello, declararíamos con lugar la "Urgente Moción de Reconsideración" presentada.

De otro lado, la Asociación de Maestros de Puerto Rico (Asociación de Maestros) presentó una "Moción urgente solicitando extensión de términos" en la que reconoció que no está preparada para litigar el caso y nos solicita casi un mes adicional para poder presentar su evidencia. Su solicitud también tomó en consideración que la parte demandante en EDUCAMOS v. Sistema de Retiro para los Maestros de Puerto Rico y otros, CT-2014-3, nos solicitó que certificáramos su demanda y la consolidáramos con la de epígrafe. Esta moción demuestra que, en efecto, lo más conveniente es que el caso siga su curso ordinario ante el Tribunal de Primera Instancia y no sea adelantado ante nuestra consideración mediante el recurso de certificación intrajurisdiccional. De esta forma, la Asociación de Maestros podrá tener lo que en efecto reclama, su día en corte, para presentar la evidencia y fundamentar su

---

[11] Véanse, por ejemplo, Trinidad Hernández v. E.L.A., 2013 T.S.P.R. 73, 189 D.P.R. ___ (2013); Alvarado Pacheco y otros v. E.L.A., 2013 T.S.P.R. 64, 189 D.P.R. ___ (2013); Nieves Huertas v. García Padilla, 2013 T.S.P.R. 106, 189 D.P.R. ___ (2013); Mundo Ríos v. C.E.E., 187 D.P.R. 200 (2012); Santini Gaudier v. C.E.E., 185 D.P.R. 522 (2012); Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920 (2011); Bomberos Unidos v. Cuerpo Bomberos, 180 D.P.R. 723 (2011); U.P.R. v. Laborde Torres Y otros, 180 D.P.R. 253 (2010); Moreno v. U.P.R. II, 178 D.P.R. 969 (2010).

reclamo legítimo sobre menoscabo de relaciones contractuales de los maestros y maestras a quienes representa.

Por consiguiente, reconsideraríamos, además, nuestra decisión de certificar el caso y lo devolveríamos al Tribunal de Primera Instancia para que lo atienda con premura.

I.

Con relación a la paralización de la Reforma al Sistema de Retiro de los Maestros, es pertinente examinar la normativa sobre la concesión del recurso extraordinario de *injunction* preliminar.

El Art. 678(3) del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3524, dispone lo siguiente:

> No podrá otorgarse un *injunction* ni una orden de entredicho … [p]ara impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico … a menos que se hubiera determinado por sentencia final, firme, inapelable e irrevisable que dicha ley o actuación autorizada por ley es inconstitucional o inválida.
> …
> Disponiéndose, sin embargo, que el tribunal podrá dictar dicha orden de entredicho provisional, injunction preliminar o permanente sujeto a los términos de la Regla 57 de Procedimiento Civil:
>
> (a) En aquellos casos en que ello sea indispensable para hacer efectiva su jurisdicción y previa una determinación de que la orden es indispensable para evitar un daño irreparable a la parte peticionaria.
>
> (b) Cuando en la petición se alegue que alguna persona, bajo la autoridad de alguna ley, ordenanza, o reglamento del Estado Libre Asociado de Puerto Rico, esté privando o sea el causante de que alguien esté privando al peticionario de algún derecho, privilegio o inmunidad protegido por la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o por la Constitución o leyes de los Estados Unidos de América que sean

aplicables a las personas bajo la jurisdicción del Estado Libre Asociado de Puerto Rico.

Por otra parte, **la actual Regla 57.2(b) de Procedimiento Civil, 32 L.P.R.A. Ap. V, requiere la celebración de una vista para considerar una solicitud de *injunction* preliminar**. Véase, además, D. Rivé Rivera, Recursos Extraordinarios, 1ra ed., Atlanta, Ed. Darby Printing Company, 1989, pág. 28. Ello no es un tecnicismo procesal, sino más bien una manera de garantizar a las partes la oportunidad de ser oídas y presentar su prueba, cumpliendo con el debido proceso de ley. Véase, Rivé Rivera, *op.cit.* Más adelante, la Regla 57.3 de Procedimiento Civil, *supra*, dispone que, para decidir si procede la expedición de dicho recurso, el Tribunal debe considerar los siguientes factores:

> (a)  la naturaleza del daño a que está expuesto la parte peticionaria;
>
> (b)  la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;
>
> (c)  la probabilidad de que la parte promovente prevalezca;
>
> (d)  la probabilidad de que la causa se torne en académica;
>
> (e)  el impacto sobre el interés público del remedio que se solicita, y
>
> (f)  la diligencia y la buena fe con que ha obrado la parte peticionaria. Íd.

Finalmente, la Regla 57.5 de Procedimiento Civil, *supra*, exige que la orden que emita el Tribunal para conceder un *injunction* preliminar detalle en términos específicos las razones para su expedición, así como lo que prohíbe.

En el caso de referencia, se impugna la constitucionalidad de la Ley Núm. 160-2013. A tenor con la normativa aplicable, esta se presume constitucional y válida. Según el Art. 678(3) del Código de Enjuiciamiento Civil, *supra*, no podía ordenarse su paralización pues no existe una sentencia final y firme que decrete que es inconstitucional o inválida. Tampoco se dan los requisitos para paralizarla mediante un *injunction* preliminar, pues hacerlo no era indispensable para hacer efectiva nuestra jurisdicción y no existe una determinación previa de que paralizar sus efectos evitaría un daño irreparable a la parte peticionaria.

Según el procedimiento establecido en la Resolución del 14 de enero de 2014, hubiéramos contado con el informe que del Comisionado Especial en o antes del 7 de febrero de 2013, lo cual nos hubiera permitido proveer un remedio oportuno antes del 15 de febrero de 2014, fecha límite para que los participantes del sistema de retiro en cuestión presentaran su renuncia. Además, es preciso señalar que el propio inciso (a) de la Sección (4) de la ley en cuestión, en la cual la mayoría de este Tribunal basó su decisión de paralizar los efectos de la ley, establece que "[l]a Oficina de Gerencia y Presupuesto, en consulta con el Departamento de Educación, podrá prorrogar la fecha límite para notificar la renuncia, hasta la fecha que estime pertinente, pero no más tarde del 30 de junio de 2014". Siendo así, existe la posibilidad de que el Tribunal de Primera Instancia, en auxilio de su jurisdicción, ordene a la Oficina de Gerencia y Presupuesto que prorrogue dicha fecha,

ya sea a petición de la parte demandante o por allanamiento del Estado.

Incluso, si enmarcamos la paralización en la excepción dispuesta en el inciso (b) del Art. 678(3) del Código de Enjuiciamiento Civil, *supra*, a saber, cuando se alegue una violación a los derechos constitucionales del peticionario, se incumple con el requisito básico de celebrar una vista antes de conceder el *injunction* preliminar. Véanse, Regla 57.2(b) de Procedimiento Civil, *supra*; D. Rivé Rivera, *op cit*. Interpretar lo contrario equivale a que cualquier ciudadano podría detener la implantación de cualquier ley con meramente alegar una violación a sus derechos constitucionales.

La Resolución mayoritaria sostiene que no es necesario celebrar una vista evidenciaria cuando no existen controversias de hecho materiales y cita dos casos federales: Aoude v. Mobil Oil orp., 862 F.2d 890 (1er Cir. 1988); Metro-Goldwin-Mayer Studios, Inc. v. Grokster, LTD., 518 F.Supp. 2d 1197 (C.D. Cal. 2007). A nuestro entender, esos casos no aplican a la controversia ante nos por varias razones: (1) eran casos entre partes privadas y no casos contra el Gobierno en los que se solicitara dejar sin efecto una ley que no ha entrado en vigor alegando que es inconstitucional; (2) Aoude v. Mobil Oil Corp., *supra*, trataba sobre los efectos de un contrato privado relacionado con la operación de una estación de gasolina y no pretendía paralizar los efectos de una ley; y (3) en Metro-Goldwin-Mayer Studios, Inc. v. Grokster, LTD., *supra*, ya se había celebrado una vista y lo que se denegó fue una vista

adicional previo a conceder un *injunction* permanente. En fin, los dos casos federales citados en la Resolución permiten por vía de excepción conceder un *injunction* sin vista previa en casos entre partes privadas cuando el Tribunal cuenta con prueba suficiente para ello, lo cual es distinguible del caso ante nos donde este Tribunal ordenó la celebración de una vista evidenciaria precisamente para recibir evidencia adicional.

Además, al considerar los factores enumerados en la Regla 57.3, *supra*, para decidir si procede la expedición de un *injunction* preliminar, es forzoso concluir que no procedía su expedición. Partiendo una vez más de que la propia Ley Núm. 160-2013 permitía prorrogar la fecha límite para que los participantes del Sistema de Retiro de Maestros anunciaran su renuncia, procede sostener que el daño no es irreparable y que la prórroga mencionada es un remedio adecuado en ley una vez celebrada la vista correspondiente.

Por último, la orden emitida por este Tribunal no cumple con los requisitos de contenido exigidos por la Regla 57.5 de Procedimiento Civil, *supra*, pues no detalla las razones para expedir el *injunction* preliminar ni el acto que prohíbe.

Al no estar presentes los requisitos indispensables que hemos señalado, lo que procede es reconsiderar la paralización de la Ley Núm. 160-2013. Mantener en efecto un *injunction* preliminar que nunca cumplió con los requerimientos de nuestro ordenamiento para su expedición equivale a un abuso arbitrario de nuestro poder. Además, denota inconsistencia en nuestro proceder pues en el caso del Sistema de Retiro de la

Judicatura, no paralizamos los efectos de la Ley Núm. 162-2013, a pesar de que esta tiene vigencia inmediata y podría afectar inmediatamente a los jueces en funciones. Tampoco paralizamos las leyes impugnadas en Trinidad Hernández v. E.L.A., 2013 T.S.P.R. 73, 189 D.P.R. ___ (2013), y Domínguez Castro v. E.L.A., 178 D.P.R. 1 (2010), en donde también se alegaron violaciones a derechos constitucionales. La prudencia y el derecho exigen declarar con lugar la "Urgente Moción de Reconsideración".

## II.

Respecto a los señalamientos hechos por el compañero Juez Asociado señor Kolthoff Caraballo en cuanto a mis posiciones anteriores, reitero muy respetuosamente que la expedición o denegatoria de un recurso extraordinario de *injunction* preliminar no es una adjudicación en los méritos a favor de alguna parte ni se supone constituya un adelanto de nuestro criterio como Tribunal sobre la resolución final de un caso. Véase Rivé Rivera, *op. cit.*, pág. 18.

Es preciso señalar y aclarar que he sido consistente en favorecer que el Tribunal de Primera Instancia sea el que resuelva inicialmente este tipo de controversias. Así ocurrió en Trinidad Hernández v. E.L.A., *supra*. De hecho, en Domínguez Castro v. E.L.A., *supra*, recalqué en mi disenso que se privó a las partes de un debido proceso de ley al no haberse celebrado una vista evidenciaria y en ningún momento favorecí la paralización de los efectos de la ley.

Hoy, mantengo mi posición pues favorezco devolver el caso al Tribunal de Primera Instancia. Tengo plena confianza en que los Jueces de la Sala de Recursos Extraordinarios tienen la experiencia, la capacidad y los recursos para resolver este caso con rapidez y de forma que las partes puedan presentar sus respectivas posiciones. Estoy seguro de que, recibida toda la prueba correspondiente, el foro primario emitirá con rapidez una decisión que la parte que esté inconforme podrá recurrir oportunamente tanto al Tribunal de Apelaciones como a este Tribunal. Será en ese momento que los miembros de esta Curia tendremos la responsabilidad de intervenir y resolver las controversias medulares de este caso de gran importancia tanto para las partes como para el país.

Bajo ninguna circunstancia estoy prejuzgando los méritos de la controversia ante nuestra consideración. **En esta etapa procesal tan temprana en que se encuentra este caso, la prudencia también aconseja que ningún miembro de este Tribunal adelante su criterio sobre las controversias planteadas.** Por eso, nos abstenemos de emitir juicio alguno sobre los méritos de este caso.

## III.

Por todo lo anterior, reconsideraríamos nuestra Resolución del 14 de enero de 2014, dejaríamos sin efecto la certificación intrajurisdiccional, devolveríamos el caso al Tribunal de Primera Instancia con órdenes de que lo atienda con premura y dejaríamos sin efecto la paralización de la Ley Núm. 160-2013. Por otra parte, denegaríamos  la solicitud de

certificación intrajurisdiccional presentada por Educadores por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc.


                                    Federico Hernández Denton
                                         Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Asociación de Maestros de Puerto Rico, et al.<br><br>      Peticionarios<br><br>           v.<br><br>Sistema de Retiro para Maestros de Puerto Rico, et als.<br><br>      Recurridos | CT-2014-2 | Certificación Intrajurisdiccional |

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez


San Juan, Puerto Rico, a 27 de enero de 2014


     Disiento enérgicamente del curso seguido por una mayoría de este Tribunal al atender la *Moción urgente solicitando extensión de los términos* presentada por la Asociación de Maestros de Puerto Rico (la Asociación), al igual que su decisión de proveer no ha lugar a la *Urgente moción solicitando reconsideración* presentada por el Estado Libre Asociado de Puerto Rico.

     La moción presentada por la Asociación deja en manifiesto que esta controversia nunca debió certificarse, por cuanto lo que nos dice la Asociación es que no está preparada para ver el caso que en el pasado nos afirmó que era urgente. Me reafirmo en que nada impide que esta controversia sea atendida adecuadamente por el foro

primario conforme al trámite ordinario y que allí se emitan, con carácter profiláctico, las órdenes que el foro estime pertinente. Como indicamos, la misma Asociación reconoce que, "por lo complejo de este caso y lo técnico del asunto involucrado", necesita un término adicional para presentar prueba adecuadamente. *Moción urgente solicitando extensión de términos*, en la pág. 2. Una mayoría de este Tribunal, sin decirlo expresamente, acoge la solicitud de prórroga de la Asociación al ordenar al Comisionado Especial a informarnos "cuánto tiempo adicional necesita para realizar su encomienda". Resolución del Tribunal Supremo de Puerto Rico de 27 de enero de 2014, en las págs. 3-4. Así, la Resolución que hoy suscribe este Tribunal modifica los términos que concedió prematuramente al expedir la petición de certificación presentada por la Asociación.

Por otro lado, el 17 de enero de 2014 el Estado Libre Asociado presentó una moción solicitando que reconsideremos nuestra decisión de certificar y paralizar los efectos de la Ley Núm. 160 de 24 de diciembre de 2013 mediante Resolución el 14 de enero de 2014. En la resolución de hoy, la mayoría finalmente atiende la petición del Estado Libre Asociado que languidecía en nuestro aposento, porque resultaría incongruente atender los reclamos de la Asociación sin demostrar la misma urgencia ante los reclamos de la otra parte, presentados casi una semana antes.

La Resolución que certificamos hoy, además de demostrar que no se justifica el trámite expedito que la

misma Asociación nos solicitó y que le concedimos, deja de manifiesto la improcedencia del *injunction* preliminar que concedió este Tribunal mediante su Resolución del 14 de enero de 2014. En el caso de autos no se ha cumplido con los requisitos estatuarios para emitir una orden de *injunction* preliminar, según exigen el art. 678(3) del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3524, y las Reglas 57.2(b) y 57.5 de Procedimiento Civil, 32 L.P.R.A. Ap. V. Estos requisitos no son meros tecnicismos legales, sino exigencias del debido proceso de ley. Sin embargo, en un intento de justificar la actuación mayoritaria de expedir un *injunction* preliminar sin celebrar una vista previa la mayoría se escuda, sorprendentemente, en citas sacadas fuera de contexto o editadas a conveniencia y en tergiversaciones de lo resuelto en cierta jurisprudencia federal.

Aunque desde un inicio este tribunal no debió certificar esta controversia y obviar el trámite judicial ordinario habida cuenta que la ley objeto de impugnación entra en vigor dentro de seis meses, proveería ha lugar a la 'Urgente moción solicitando reconsideración' presentada por el Estado Libre Asociado de Puerto Rico y reconsideraría la decisión de una mayoría de este Tribunal de ordenar la paralización provisional de los efectos de la Ley Núm. 160 de 24 de diciembre de 2013, Ley del Sistema de Retiro para Maestros del Estado Libre Asociado

de Puerto Rico. Porque no puedo obviar este proceder, suscribo este disenso.[12]

I

A.

El 14 de enero de 2014 la Asociación presentó ante este Tribunal una Petición de Certificación acompañada por una Moción en Auxilio de Jurisdicción para que este Tribunal interviniera de manera "urgente y expedita" en la resolución de esta controversia. *Moción en auxilio de jurisdicción*, en la pág. 2. Ante la petición urgente de la Asociación, una mayoría de este Tribunal decidió certificar con premura (ese mismo día) esta controversia y paralizar los efectos de la Ley Núm. 160 de 24 de diciembre de 2013. A su vez, en la Resolución de este Tribunal se designó a un Comisionado Especial para que recibiera prueba sobre las alegaciones de las partes y rindiera un informe. Acogiendo como ciertos los

---

[12] En su *Voto particular de conformidad*, la Jueza Asociada señora Pabón Charneco traza una narrativa ofusca que, a lo sumo, autorretrata sus inconsistencias en el quehacer adjudicativo. *Véase Domínguez Castro v. Estado Libre Asociado de Puerto Rico*, 178 D.P.R. 1 (2010), en comparación a *Trinidad Hernández v. Estado Libre Asociado*, 2013 T.S.P.R. 73, 188 D.P.R. __ (2013) (Pabón Charneco, J., Opinión Disidente). En su alocución, la Jueza Asociada señora Pabón Charneco "olvida -o quiere olvidar" que tanto en *Trinidad Hernández* como en *Suárez v. Comisión Estatal de Elecciones*, 163 D.P.R. 347 (2004), contábamos con una determinación del foro primario al momento de expedir la certificación. En ocasiones anteriores ha quedado evidenciado y de manera inteligible las razones por las cuales me he opuesto a que este Tribunal expida certificaciones obviando todo trámite en el foro de instancia. *Véase Domínguez Castro v. Estado Libre Asociado de Puerto Rico*, 178 D.P.R. 1 (2010) (Rodríguez Rodríguez, J., Opinión Disidente); *PNP v. CEE y PPD I*, 185 D.P.R. 283 (2012) (Hernández Denton, J.P., Opinión Disidente).

planteamientos de urgencia señalados por la Asociación, se le ordenó al Comisionado Especial que presentara el informe no más tarde del viernes 7 de febrero de 2014.

No obstante, el 23 de enero de 2014 la Asociación presentó ante este Tribunal una moción urgente solicitando extensión de los términos para que el Comisionado Especial emita el informe. De concederse la extensión solicitada, el Comisionado Especial emitiría el informe el 28 de febrero de 2014 en vez del 7 de febrero de 2014. Es decir, la Asociación, "por lo complejo del caso y lo técnico del asunto involucrado" hoy solicita que se prorrogue el término que una mayoría de este Tribunal ordenó, precisamente en atención a la petición urgente de certificación de la Asociación. *Moción urgente solicitando extensión de términos*, en la pág. 2. **En otras palabras, los peticionarios no están listos para litigar el caso y hoy nos solicitan casi un mes adicional para poder presentar prueba adecuadamente.**

B.

Para justificar su decisión de proveer no ha lugar a la moción de reconsideración presentada por el Estado Libre Asociado de Puerto Rico, el Tribunal busca apoyo para la Resolución que certifica en cuatro fuentes, a saber: el tratado de derecho procesal civil del profesor Rafael Hernández Colón, un tratado de derecho procesal civil federal, un caso de la Corte de Apelaciones de Estados Unidos para el Primer Circuito y un caso de la Corte de Distrito de Estados Unidos para el Distrito

Central de California.  Recalco lo obvio: no se cita un caso de este Tribunal que justifique su actuación porque simple y llanamente no existe. Como demostraremos, el apoyo recabado de estas fuentes es un mero espejismo.

En la Resolución que certifica hoy este Tribunal se hace referencia a las anotaciones del profesor Rafael Hernández Colón en su libro *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, para sostener que "es innecesario celebrar una vista evidenciaria como requisito previo para emitir un *injunction* preliminar cuando no existen controversias de hechos materiales". Resolución del Tribunal Supremo de Puerto Rico del 27 de enero de 2014, en la pág. 2. Sin embargo, en la página 539 del tratado del profesor Hernández Colón citada por el Tribunal, éste solo se limita a abundar sobre la aplicación de los criterios establecidos en la Regla 57.3 de Procedimiento Civil, 32 L.P.R.A Ap. V, para conceder un *injunction* preliminar. Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil* 539 (5ta ed. Rev. 2010). En ningún momento hace referencia a excepción alguna al requisito de que un tribunal celebre una vista antes de conceder un *injunction* preliminar. En cambio, el mismo tratado categóricamente reconoce — dos páginas antes de la página citada en la Resolución de hoy – la necesidad de celebrar una vista antes de conceder un *injunction* preliminar: "Habrá vista (R. 57.2(b), 2009)". *Id*. en la pág. 537.  La cita selectiva no puede ser fundamento válido para la acción propuesta.

En cuanto a la jurisprudencia federal que cita la Resolución que hoy certifica este Tribunal, se traza una interpretación cribada del derecho federal para justificar una decisión incompatible con lo resuelto por el propio foro que se cita, con las propias reglas de procedimiento federal y, más grave aún, con nuestro ordenamiento jurídico. Resulta meridianamente claro que ninguno de los dos casos citados, además de ser jurisprudencia federal no vinculante para este Tribunal, sostiene la proposición adoptada por la Resolución, ni abonan a la correcta adjudicación de la controversia ante nuestra consideración. Por lo tanto, no se ha demostrado por qué debemos considerarla persuasiva. El primer caso citado en la Resolución, *Aoude v. Mobil Orl Corp*, 862 F. 2d 890 (1er Cir. 1988), si bien expresa que una vista evidenciaria no es un requisito indispensable para que un tribunal atienda una solicitud de *injunction* preliminar, *Id*. en la pág. 893, establece un estándar de prueba pragmático para guiar al tribunal en su decisión de obviar la norma general de celebrarla:

> The test should be substantive: given the nature and circumstances of the case, did the parties have a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions? If the question is close and time permits, then doubt should be resolved in favor of taking evidence.
> *Id.* en la pág. 894.

Además, el tribunal provee algunos ejemplos de cuándo no es necesario celebrar una vista evidenciaria: cuando el tribunal está en posesión de un expediente con suficiente evidencia sustancial, de forma tal que le permita llegar a

una conclusión razonable; cuando recibir evidencia adicional no serviría propósito alguno; y cuando se le ha concedido una oportunidad amplia a las partes de presentar escritos. *Id*. en la pág. 893.

Consecuentemente en este caso, la Corte de Apelaciones al evaluar si la Corte de Distrito debió celebrar una vista evidenciaria, concluyó que las partes tuvieron suficiente oportunidad para presentar evidencia y argumentos, pues (1) el caso original llevaba meses pendiente ante el mismo juez; (2) el tribunal tenía ante sí un récord tan informativo como el que produciría una vista evidenciaría (incluyendo memorandos, declaraciones juradas, cientos de páginas de deposiciones y más de dos docenas de *exhibits* evidenciarios); (3) las partes se beneficiaron de un extenso descubrimiento de prueba *antes de solicitar el injunction*; y (4) los hechos esenciales para adjudicar la controversia no estaban en controversia. *Id*. en la pág. 894.

Asimismo, el foro apelativo intermedio federal expresamente reafirma que al conceder un *injunction* preliminar, el tribunal debe fundamentar las determinaciones de hechos y conclusiones de derecho que lo llevaron a expedir o denegar el recurso solicitado, pues las partes tienen derecho a conocer las razones que motivaron la decisión del tribunal y proteger su derecho de apelar o solicitar la reconsideración de esa decisión. *Id*. en la pág. 895.

Evidentemente, no estamos ante circunstancias similares para que hallemos persuasivos los fundamentos de

la sentencia federal y obviemos el requisito expreso de nuestras Reglas de Procedimiento Civil de celebrar una vista evidenciara antes de conceder un *injunction* preliminar. Máxime cuando el Estado Libre Asociado no tuvo la oportunidad de presentar escrito alguno antes de que una mayoría de este Tribunal optara por conceder el *injunction* preliminar. Si aplicamos el escrutinio que articuló la Corte de Apelaciones en *Aoude,* resulta evidente que la controversia de autos no cumple con los estándares pautados. Primero, al momento en que se concedió el injunction preliminar este caso llevaba apenas unas horas de vida. Segundo, el expediente ante nuestra consideración era casi inexistente, pues sólo contenía la demanda presentada y no contenía ni siquiera un memorando del Estado. Por lo tanto, una vista evidenciaria produciría, sin duda alguna, un expediente considerablemente más completo e informativo. Tercero, las partes no se beneficiaron ni del más exiguo descubrimiento de prueba. Finalmente, no estuvimos en posición de determinar si los hechos esenciales estaban en controversia o no, pues al Estado no se le concedió una oportunidad de ponerlos en controversia. No obstante, como reconoce la propia Resolución del Tribunal, retroactivamente se sustenta la supuesta falta de controversia de hechos esenciales a través de la moción de reconsideración presentada por la Procuradora General el 17 de enero de 2014, tres días luego de concedido el *injunction* preliminar. Resolución del Tribunal Supremo de Puerto Rico de 27 de enero de 2014, en la pág. 3. Como

podemos ver, el caso de autos no satisface ni uno de los criterios desglosados en *Aoude* para determinar si las partes tuvieron una oportunidad adecuada de presentar hechos y argumentos relevantes, al mismo tiempo que no presenta determinaciones de hecho o conclusiones de derecho que fundamenten la decisión de conceder el *injunction* preliminar.

El segundo caso citado por la resolución de este Tribunal, *Metro-Goldwyn-Mayer Studios, Inc. V. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal 2007), tampoco es persuasivo para la correcta adjudicación de la controversia ante nosotros. La controversia en ese caso giraba en torno a un *injunction* **permanente** en el contexto de la normativa federal sobre derechos de autor. En este caso, la Corte de Distrito simplemente evaluaba la necesidad de celebrar una vista evidenciara **adicional**, pues ya había celebrado una vista donde las partes abundaron sobre el alcance del *injunction* solicitado y contaba con escritos de ambas partes posteriores a la vista inicial.

Finalmente, el propio comentario de Wright & Miller a las reglas federales de procedimiento civil, en el cual se basa la Resolución, reconoce que aunque pueden existir excepciones a la norma general de celebrar una vista oral antes de conceder un *injunction* preliminar, esto sólo puede ocurrir cuando el tribunal cuente con suficiente evidencia escrita, presentada por las partes a través de memorandos. 11A Fed. Prac. & Proc. Civ. § 2949 (2d ed.). A tales efectos, se señala lo siguiente:

A distinction should be drawn, however, between denying an opportunity to present oral testimony as to the facts and refusing to permit oral argument on issues of law. Because judicial discretion plays a significant role in the preliminary-injunction context, **it is especially important that the parties be allowed to present their views as to what effect the facts should have on how that discretion is exercised. Consequently, legal argument on a preliminary-injunction motion should not be denied unless the implications of the facts, as well as the facts themselves, are clear beyond serious dispute.** Thus, cases may exist in which the proper disposition of the application is so manifest from the written evidence that argument by counsel would be a superfluity.
Finally it should be noted that Rule 52(a)(2) requires that in granting or refusing a preliminary injunction the court must set out the findings and conclusions constituting the grounds for its action.

11A Fed. Prac. & Proc. Civ. § 2949 (2d ed.)

En este caso no se le concedió al Estado la oportunidad de expresarse sobre la solicitud de un *injunction* preliminar, a pesar de que no estamos ante una situación donde sea superfluo brindarle la oportunidad de ser escuchado, o mucho menos donde todos los hechos sean "clear beyond serious dispute". *Id.* Según los criterios elaborados en los comentarios de Wright & Miller, tampoco se justifica la actuación de una mayoría de este Tribunal.

III

Por todo lo anterior, proveería no ha lugar a la solicitud de la Asociación de que extendamos los términos y acogería la solicitud del Estado Libre Asociado de Puerto Rico: reconsideraría nuestra Resolución del 14 de enero de 2014 y dejaría sin efecto la paralización de la Ley Núm. 160. A su vez, devolvería el caso al Tribunal de Primera Instancia y, como indiqué en nuestra Resolución

del 14 de enero, ordenaría al Juez del Tribunal de Primera Instancia a atender este caso con la mayor premura sin nuestra intervención, pues entiendo que ese foro cuenta con las herramientas necesarias para evaluar cabalmente la controversia entre las partes y garantizar que éstas tengan la oportunidad de presentar prueba adecuadamente con la rapidez que amerita este asunto.


Anabelle Rodríguez Rodríguez
Juez Asociada